Glenn FRANK, Appellee,

v.

AMERICAN FREIGHT SYSTEMS, INC., Appellant,

and

Baumberger & Sons Trucking, Inc., Defendant.

No. 85–1640.

Supreme Court of Iowa.

Jan. 14, 1987.

Rehearing Denied Feb. 16, 1987.

Donald A. Wine and Kimberly K. Mauer of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellant.

Kevin M. Abel of Belin, Harris, Helmick, Tesdell, Lamson, Blackledge & McCormick, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

LARSON, Justice.

Glenn Frank was turned down as a truck driver for American Freight Systems, Inc. because of a back problem which, under company rules, automatically excluded him from consideration. Frank filed a complaint with the Iowa Civil Rights Commission, alleging disability discrimination under Iowa Code section 601A.6 (1981). The commission did not rule on the merits of the complaint but issued a "right to sue" letter, Iowa Code § 601A.16, and Frank pursued his claim through an original action in district court.

The district court agreed that Frank had been the victim of discrimination and awarded him back pay, front pay, damages for emotional distress and mental anguish, and attorney fees. It also ordered American Freight to employ him and to cease and desist similar hiring practices. American Freight appealed; we now reverse and remand.

At the time Frank applied for the job, he was forty-nine years old and had had over twenty years experience as a driver. In 1966, his lower back was injured, and a laminectomy and fusion were performed on his spine. Frank continued to drive trucks and to do heavy lifting. During this time, he passed several physical examinations required for drivers in interstate commerce.

The hiring rule under attack here, prohibiting employment of persons with certain back conditions, is embodied in American Freight's special "Back X-ray Report" form. This form is required to be completed by all driver applicants at American Freight. Three categories of back abnormalities are listed: Category "A," "abnormalities of minor importance," Category "B," "abnormalities of increased importance," and Category "C," which contains the rule at issue here. Category "C" lists sixteen "abnormalities indicating substandard risk for sustained heavy work" and adds this note: "Any condition here automatically disqualifies." In Frank's case, one of these listed conditions, "prior back surgery," was noted by the x-ray examiner, and his driver's application immediately hit a dead end. He was denied employment despite his protestations that his back problems had not impaired his ability to work as a truck driver.

## I. *Scope of Review.*

█ Our first consideration is the scope of review. This case was initially filed in equity to force the hiring of Frank, and it was tried throughout as an equitable action. Under our general rule, we will treat a case on appeal in the same manner it was tried in district court. *See Life Investors' Insurance Co. v. Heline,* 285 N.W.2d 31, 35 (Iowa 1979); *Henderson v. Hawkeye-Security Insurance Co.,* 252 Iowa 97, 100, 106 N.W.2d 86, 88 (1960). Our review must therefore be de novo. *See* Iowa R.App.P. 4. It should be noted that this scope of review in discrimination cases is unusual; such cases ordinarily arise as challenges of actions of the civil rights commission and thus are reviewable on a substantial evidence basis. *See, e.g., Consolidated Freightways v. Cedar Rapids Civil Rights Commission,* 366 N.W.2d 522 (Iowa 1985); *Sommers v. Iowa Civil Rights Commission,* 337 N.W.2d 470 (Iowa 1983); *King v. Iowa Civil Rights Commission,* 334 N.W.2d 598, 601 (Iowa 1983); *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162 (Iowa 1982). Under the unusual circumstances of this case, the parties agree our review is de novo.

## II. *The Statute and Rules.*

Iowa Code section 601A.6 provides, in part:

1. It shall be an unfair or discriminatory practice for any:

a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, national origin, religion or disability of such applicant or employee, *unless based upon the nature of the occupation.* If a disabled person is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or dis-

criminating practices prohibited by this subsection.

(Emphasis added.)

"Disability" is defined in Iowa Code section 601A.2(11) as

the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, "disability" also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation.

Further definitions are provided by rules of the Iowa Civil Rights Commission at 240 Iowa Admin.Code § 6.1, as follows:

6.1(1) The term *"substantially handicapped person"* shall mean any person who has a physical or mental impairment which substantially limits one or more major life activities, *has a record of such an impairment, or is regarded as having such an impairment.*

. . . .

6.1(4) The term *"has a record of such an impairment"* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

6.1(5) The term *"is regarded as having an impairment"* means:

a. Has a physical or mental impairment that does not substantially limit major life activities but that is perceived as constituting such a limitation;

b. Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

c. Has none of the impairments defined to be "physical or mental impairments," but is *perceived* as having such an impairment.

(Emphasis added.)

## III. *The Disparate Impact Theory.*

An employment rule or practice might be neutral on its face yet have the effect of discriminating against a particular individu-

al. For example, an apparently innocuous rule imposing minimum size standards for employees might work to the disadvantage of women. *See Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). Or a rule imposing minimum educational or intelligence standards might have the effect of discriminating against disadvantaged blacks. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Such a rule, neutral on its face but having an impact along sex, religious, or racial grounds, is evaluated under the "disparate impact" test. However, a rule which discriminates on its face is evaluated under the test of "disparate treatment." *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977). The disparate treatment type of discrimination is said to be the most easily understood. *Id.* See generally Nichols, *Iowa's Law Prohibiting Disability Discrimination in Employment: An Overview,* 32 Drake L.Rev. 273, 383–84 (1982–83).

■ The trial court in the present case, while expressing some doubt about the applicability of the disparate impact analysis, nevertheless discussed it in its opinion and relied on it as an alternative basis for its ruling. On appeal, American Freight argues that this was erroneous and that the rule in question must be analyzed only under the test for disparate treatment. We agree. The actual purpose of the rule is just what it purports to be—to prevent the hiring of applicants with certain back conditions. In view of this, we need not search for any hidden motives or disparate impacts but analyze the case under a disparate treatment analysis.

IV. *The Justification for the Hiring Rule—The Nature of the Business Defense.*

American Freight argues that Frank is *actually* disabled under Iowa Code section 601A.2(11) and commission rules 6.1(1) and (4), quoted above. Frank argues that he is not actually disabled but that American Freight perceives him to be and that he is therefore considered to be disabled for discrimination purposes under commission rules 6.1(1) and (5). In either event, Frank is "disabled" as that term is used in Iowa Code section 601A.6. The key issue is whether American Freight was justified in refusing his employment application on the basis of this disability.

■ A complainant asserting employment discrimination has the burden of persuasion to establish the complaint by a preponderance of the evidence, *Consolidated Freightways,* 366 N.W.2d at 530; *King,* 334 N.W.2d at 601, and the ultimate burden of persuasion never shifts. *King,* 334 N.W.2d at 602; *Linn Co-Operative Oil Co. v. Quigley,* 305 N.W.2d 729, 733 (Iowa 1981).

■ The procedure in discrimination cases is as follows: (1) The complainant must first establish a prima facie case of discrimination; (2) the employer may then show a "legitimate, non-discriminatory reason" for its conduct; and (3) the complainant may then attack this reason as only a pretext for discrimination, or one unworthy of belief. *Consolidated Freightways,* 366 N.W.2d at 530; *King,* 334 N.W.2d at 601–03.

Under Iowa Code section 601A.6, there is another alternative by which a person claiming discrimination on the basis of a *disability,* as opposed to other forms of discrimination, may negate the effect of the disability. That is to show that "by reason of training or experience" the person is qualified to perform the job, notwithstanding the disability. Iowa Code § 601A.6(1)(a) (last unnumbered sentence).

In applying these tests to the present case, the first question is whether a prima facie showing had been made by Frank. American Freight agrees that Frank is disabled within the meaning of section 601A.6 and concedes the rule in question discriminates against persons with specific back problems. Frank's back problem, in fact, was the very reason American Freight gave for not hiring him. We believe a

prima facie case of discrimination has been made, and American Freight appears to concede that point.

Proceeding to the second step of the analysis, we reach the heart of the case. American Freight contends that an employer of truck drivers may refuse to hire any applicant with a history of back problems under the "nature of the occupation" exception under section 601A.1. ("It shall be an unfair or discriminatory practice ... to ... discriminate in employment against any applicant because of ... disability ... unless based upon the nature of the occupation.") Under American Freight's argument, it may legally apply its "bad back" rule on a blanket basis, and individualized consideration need not be given to applicants. Frank counters that consideration must be given to his individual circumstances and that a blanket exclusionary rule cannot be applied. He argues that this is evidenced by the fact that a disabled person may establish "training or experience" to overcome the effects of a disability, as provided by the last sentence of section 601A.6.

At least one writer agrees with Frank's view:

> The nature of an occupation simply does not permit the blanket exclusion of a class of handicapped applicants because if a disabled person is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminatory practices prohibited by this subsection. A class-wide exclusion of handicapped applicants would be inconsistent with a consideration of the applicant's individual training, experience, and ability.

Nichols, *supra*, 32 Drake L.Rev. at 358.

We believe that, in most discrimination cases based on disability, individualized consideration must be given to the job and to the applicant's particular circumstances, both as they bear on the employer's "nature of the occupation" defense and the complainant's claim of special training or experience. The nature and extent of a disability, the needs of a particular job, and the impact of disability on a person's ability to perform that job, are too diverse to permit generalized application of such rules. This is implicit in our *Foods, Inc.* case, where we looked to the individualized circumstances of the complainant and the job. *See Foods, Inc.*, 318 N.W.2d at 166–69. This would not be true in every disability case, of course, because the nature of the disability and the job might in some cases be so incompatible that generalized rules could be applied. A rule prohibiting employment of a blind person as a driver would be an obvious example.

Frank had applied for a job in American Freight's perishable division. Employees in that division are required by their contract with American Freight to load and unload cargo, including boxed meat weighing up to 150 pounds. Drivers work in teams, sharing the driving, loading, and unloading duties. While the loading and unloading of trucks is sometimes done by forklifts or by "lumpers" hired by the drivers, it is the ultimate responsibility of the drivers to see that it is done. When forklifts or lumpers are not available, the drivers are required to load and unload.

Frank's lower back condition is diagnosed as "prior surgery, retrospondylolisthesis and disk degeneration disease." This diagnosis is not disputed. The effect of this condition on Frank's ability to perform the work of a driver, however, is strongly disputed. Frank contends he had driven trucks, and had done heavy lifting, for fifteen years after his back surgery without any problems. The company's medical witness testified that, on occasion, a person can live an entire lifetime without pain or disability from such condition but that this would be unlikely. He testified that these conditions would get worse in time and would be aggravated by heavy lifting (anything over twenty-five pounds), sitting for prolonged periods of time, and the bouncing and vibration necessarily incident to truck driving. He estimated the likelihood of future back pain and disability in Frank's case to be "greater than fifty

percent, possibly greater than seventy-five percent."

A study by the American Academy of Orthopedic Surgeons, introduced into evidence, concludes that low back pain is the most common musculoskeletal problem and that there is a complex occupational relationship involving lifting, riding, and vibration which would present increased risks for truck drivers.

Another study introduced into evidence concluded this:

> California workers compensation data show that truck drivers have the highest incidence of back injuries.... Statistics from Wisconsin ... and Connecticut ... tend to confirm this, and it has been postulated that the prolonged sitting involved in truck driving is an important contributing factor.... It is of interest to note, however, that less than 10% of the truck drivers have their initial episode while actually driving the truck; more than half of their low back accidents occur while engaged in the heavy physical work associated with loading and unloading.

That back problems of employees is of great concern to potential trucking employers is apparent from the fact that Frank had been turned down on approximately thirty job applications before he applied with American Freight.

Frank offered no medical evidence to contradict the testimony of American Freight's medical expert, only his subjective assertions that he had been able to do the job adequately in the past. Even assuming Frank is presently having no problems with driving or lifting, as he contends, there still is a substantial likelihood that he will suffer symptoms in the future under the stress of driving and lifting.

In discussing the "business necessity" defense under the federal civil rights act, which is similar to our "nature of the occupation" defense, one court has said:

> The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business.

> Thus, the business purpose must be sufficiently compelling to override any [discriminatory] impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential [discriminatory] impact.

*Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir.1971).

▬ As already noted, the burden of showing a business necessity for the discrimination is upon the potential employer. On our de novo review, we conclude that burden has been met here. The "nature of the occupation" defense under Iowa Code section 601A.6(1)(a) has been established, we believe, by showing an overriding, legitimate business purpose for the rule.

Although our civil rights act is to be "liberally construed to effectuate its purposes," Iowa Code § 601A.18, we do not believe one of those purposes is to require the hiring of a person, such as Frank, whose condition is more likely than not to cause future problems in job performance and interruption of the employer's business.

V. *The Reasonable Accommodation Requirement.*

▬ Our conclusion that American Freight has adequately established its nature of the occupation defense does not necessarily mean it may avoid the effect of its refusal to hire Frank. An employer must make a reasonable accommodation for a disability, unless it would be an undue hardship to do so. *See Foods, Inc.*, 318 N.W.2d at 167. Frank eschews any need to consider the reasonable accommodation concept, because he claims American Freight failed to establish a legitimate basis for refusing his employment application. He needs no special accommodation by American Freight, he claims, because he can do the job without it. Because of our holding that American Freight did sustain

its burden of showing a reasonable business necessity for its rule, however, we must address the impact of the reasonable accommodation rule.

In the analogous area of religious discrimination, we have held that reasonable accommodation must be made by an employer only if it does not substantially impinge on the rights of other employees or incur more than a de minimus cost to the employer. *King*, 334 N.W.2d at 334 (citing *TransWorld Airlines, Inc. v. Hardison*, 432 U.S. 63, 83–84, 97 S.Ct. 2264, 2276–77, 53 L.Ed.2d 113, 130–31 (1977)).

■ While Frank argues that no accommodation need be made for him because he is presently able to do the job, we believe American Freight is justified in looking ahead to the situation, which the medical evidence shows to be probable, in which Frank will not be able to do the job. In that situation, other employees would be required to fill in for him. Frank's team driver might be required to do all of the heavy work, including the loading and lifting. To hold, as the district court did, that this would be a reasonable accommodation, we believe was erroneous. It would almost certainly slow down the loading and unloading process. It is very possible, as American Freight points out, that an able-bodied teammate could not complete the loading or unloading immediately because of federal requirements for drivers to have a certain minimum number of hours of sleep. There would therefore be times when neither driver could load or unload, and as the evidence showed, it is not always possible to hire outsiders to do such work. We conclude that, to require this employer to make such accommodation as would be necessary under these conditions, would be unreasonable. *See TransWorld Airlines, Inc.*, 432 U.S. at 83–84, 97 S.Ct. at 2276–77, 53 L.Ed.2d at 130–31.

We believe that the district court erred in entering judgment in favor of Frank. We therefore reverse and remand for entry of an order dismissing the petition.

REVERSED AND REMANDED.