**CERRO GORDO COUNTY CARE FACILITY, County of Cerro Gordo and Cerro Gordo County Board of Supervisors, Appellees,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Appellant.**

No. 86–487.

Supreme Court of Iowa.

Feb. 18, 1987.

C.W. McManigal and Richard H. Moeller of Laird, Burington, Heiny, McManigal, Walters & Winga, Mason City, for appellees.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for appellant.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

SCHULTZ, Justice.

In this appeal the issue is whether an employer engaged in a discriminatory practice by failing to accommodate a disabled employee, who, because of his disability, was first transferred to another job and later placed on paid sick leave until he was able to resume his original post. The Iowa Civil Rights Commission found that the employer, Cerro Gordo County Care Facility, Cerro Gordo County Board of Supervisors, and Cerro Gordo County, twice violated the civil rights of employee Richard Fulton, a ward attendant at the county care facility, who suffered from a seizure disorder. On judicial review the district court reversed the agency decision, determining that the commission's finding that the employer failed to make reasonable accommodation of the employee was unsupported by substantial evidence in the record. We affirm.

The employee was hired at the care facility as a ward attendant in January of 1979. At the time of employment he also acted as a "med aid," dispensing medicine, but this duty was withdrawn after he made an error in carrying out this responsibility. In May of 1982, the employee suffered a sei-

zure at his home and was hospitalized briefly. He was released and returned to work. Under the state law he lost his driver's license for six months as a result of the seizure. Although ward attendants were required to transport residents to and from various appointments, the employee was allowed to continue his employment as ward attendant. Driving duties were taken over by other attendants on his shift. Although his supervisor stated that she did not place a six month limit on this arrangement, the employee asserts that the supervisor deferred a decision as to his continued employment as a ward attendant until the six month period had passed. In November, the employee suffered a second seizure diagnosed as "idiopathic convulsive disorder, a grand mal." The suspension of his driver's license consequently was continued for an additional six months. Upon returning to work, the employee was given the choice of being laid off, or taking a six month leave of absence during the suspension period, or transferring to a combination dietary and housekeeping job. The employee elected to transfer to the dietary and housekeeping job. His compensation remained the same, and his new hours were, if anything, more desirable.

In March 1983, while operating a floor buffing machine as part of his housekeeping duties, the employee fell and bruised his hip. He visited his physician at that time and, at the request of the facility, he obtained an updated list of job restrictions. These included restrictions from working on stools or ladders and from running floor polishing machines. The employee also expressed concern that he might have a seizure while lifting large pots of coffee or other hot liquids while working in the kitchen. Additionally, the employee was dissatisfied with the position in the dietary and housekeeping departments. He testified that it was a less prestigious position, and did not give him the opportunity he desired for personal contact with residents.

Upon receiving the employee's new list of job restrictions, his supervisor, in consultation with the union steward, offered the employee the options of termination, leave of absence, or sick leave with pay until he was able to perform the required duties of his job. The employee went on paid sick leave from March through May of 1983. On June 1, he was reinstated as a ward attendant, having regained his driving privileges.

On February 7, 1983, the employee filed a charge of discrimination based on disability against the employer, alleging that the job transfer to the dietary and housekeeping department was not a reasonable accommodation of his disability. On April 7, 1983, the employee filed a second charge of discrimination against his employer, claiming that the placement of the employee on sick leave was done in retaliation for filing the first action. Following a two day evidentiary hearing on the complaints, the hearing officer filed a lengthy recommended decision and order consisting of twenty-three legal pages. The recommended decision was adopted by the commission, with the exception of some minor modifications of facts and a modification of the damage award.

The final agency decision concluded that the transfer to dietary and housekeeping was not a reasonable accommodation of the employee's inability to drive due to his disability, and ordered the employer to pay the sum of $1,000 in damages for emotional distress. The commission found that the employee had failed to prove his claim of retaliation based on the transfer to sick leave; however, it found that placing the employee on leave rather than adjusting his duties was not a reasonable accommodation because the employee would have preferred to remain at work. The commission assessed $500 in damages for emotional distress plus interest and other costs.

Additionally, the employer was ordered to cease and desist from the discriminatory practice, and to take certain remedial actions, including submitting to the commission a revision of the "Policies and Procedures" manual that is nonsexist, clarifies physical condition as a basis for employee selection and sets forth a maternity leave

policy. The employer was also ordered to clarify the status of med aid certification of the employee and study the possibility of his recertification, and to post notices in conspicuous places at the care facility. We do not address the propriety under Iowa Code section 601A.15(8) of ordering remedial action that is irrelevant to the specific charge in question, because this issue was not raised in the petition for judicial review or on this appeal.

On review, the district court found substantial evidence in the record as a whole to support the commission's conclusion that Fulton's seizure disorder was a disability under Iowa Code section 601A.2(11) (1981). The court went on to hold, however, that the record did not support the finding of failure of the facility to reasonably accommodate Fulton's disability, and that Fulton was not entitled to the award of damages for emotional distress. The only issue on this appeal is whether the district court erred in holding that the facility did not reasonably accommodate Fulton.

Respondent, because political subdivisions and agencies of the State of Iowa are persons, Iowa Code § 601A.2(2), is subject to the prohibition against discriminatory practices as set forth in Iowa Code section 601A.6. Section 601A.6(1)(a) prohibits discrimination against "any employee because of ... disability ..., unless based upon the nature of the occupation." Under the commission rule enunciated in 240 Iowa Administrative Code 6.2(6), which was promulgated pursuant to Iowa Code chapter 601A, an employer must

> make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the program.

As to a disability that arises during an employee's employment, "the employer shall make every reasonable effort to continue the individual in the same position or to retain and reassign the employee and to assist in his or her rehabilitation." 240 Iowa Admin. Code 6.3.

The commission argues that this language in rule 6.3 must be construed to mean that an employer must first make reasonable efforts to continue the employee in the same position, and reassign the employee only if such accommodation produces undue hardship to the employer. The employer argues that the rule provides alternate methods of accommodating an employee's disability.

I. *Scope of review.* Judicial review of final agency action of the Civil Rights Commission may be sought under the Iowa Administrative Procedure Act, Iowa Code chapter 17A. Iowa Code § 601A.17. Judicial review is an original proceeding in district court. *Western Int'l v. Kirkpatrick,* 396 N.W.2d 359, 363 (Iowa 1986). We have often said that the district court review is appellate in nature, however. *Id.; Mary v. Iowa Dep't of Transp.,* 382 N.W.2d 128, 131 (Iowa 1986). The district court is entitled to alter or grant relief from the agency action upon the grounds specified in Iowa Code section 17A.19(8).

 In this appeal, relief is sought on only one of the specified grounds, namely, that "substantial rights of the petitioner have been prejudiced because the agency action is ... unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole...." *See* Iowa Code § 17A.19(8)(f). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *City of Davenport v. Public Employment Relations Bd.,* 264 N.W.2d 307, 311 (Iowa 1978). The substantial evidence test in reviewing agency action must not be confused with the standard applicable to appellate review of a jury verdict or findings of fact of a trial judge in a law action; under the latter standard, only evidence supporting the verdict or finding of fact need be considered. *Id.* at 312. The requirement of taking all record evidence into account in reviewing administrative findings does not detract from the duty of courts to grant appropriate deference to

agency expertise. *Id.* (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456, 467–68 (1951)). While the reviewing court gives respect to the agency's findings, the findings must be set aside when the record clearly shows that the agency's decision was not justified. *Universal Camera Corp.*, 340 U.S. at 490, 71 S.Ct. at 466, 95 L.Ed. at 468–69.

An aggrieved party in the judicial review proceedings "may obtain a review of any final judgment of the district court . . . by appeal." Iowa Code § 17A.20. Our review is clearly appellate, reviewing the decision of the district court to correct errors at law. *Kirkpatrick*, 396 N.W.2d at 363. In deciding whether the district court correctly applied the law we examine the record before the agency and look to the standards of section 17A.19(8) to determine whether this court's conclusions are the same as those of the district court. *Polk County v. Iowa Natural Resources Council*, 377 N.W.2d 236, 239 (Iowa 1985); *Brown v. Public Employment Relations Bd.*, 345 N.W.2d 88, 93 (Iowa 1984). *Contra American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185, 210 (1981) (citing *Universal Camera Corp.*, 340 U.S. at 491, 71 S.Ct. at 466, 95 L.Ed. at 469 (test on appeal is whether the court of appeals misapprehended or grossly misapplied the substantial evidence test based on the agency's finding)).

■ II. *Reasonable accommodation.* We detailed the analytical framework outlining the burden and order of presenting proof in civil rights cases under chapter 601A in *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601–03 (Iowa 1983). We need not repeat the framework in detail here, except to reiterate that the burden of proof remains with the complainant to show discrimination, and the employer only has a duty to produce evidence of reasonable accommodation after a prima facie case of discrimination has been presented. As the parties have not disputed the issue whether the commission

presented a prima facie case of disability discrimination, we will assume this showing was made and examine the contentions concerning reasonable accommodation. The commission contends the trial court erred in reversing the agency determination that the employer did not reasonably accommodate employee's disability. It urges that substantial evidence in the record supports the agency's finding. It emphasizes that rule 6.3 requires the employer initially to accommodate the employee in the same position, and only when that is not feasible to accommodate the employee by a transfer to another job. The commission, on behalf of the employee, maintains that the record shows the employer needlessly displaced him, in an affront to the dignity of a disabled person who desired to make the fullest use of his skills and knowledge. We believe that the commission has overstated an employer's duty to accommodate a disabled employee. Furthermore, we conclude the district court correctly determined that there was not substantial evidence to support a finding of failure to accommodate.

■ We first examine the duty to accommodate a disabled employee. Section 601A.6 defines an unfair or discriminatory practice to include discrimination by an employer against a disabled employee; however, no express statutory duty is placed on an employer to accommodate an employee's disability. In *Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162 (Iowa 1982), we approved the concept of reasonable accommodation that does not impose undue hardship on the employer. *Id.* at 167. We believe that the concept of accommodation inheres in the legislative prescription that "[t]his chapter shall be construed broadly to effectuate its purposes." Iowa Code § 601A.18. Discrimination against the disabled differs from other types of discrimination in that other types, such as racial, religious, or sex discrimination, usually bear no relationship to the individual's ability to perform a job. Consequently, it is necessary to provide a requirement of reasonable accommodation in order to elim-

inate discrimination against the disabled. *Holland v. Boeing Co.*, 90 Wash.2d 384, 583 P.2d 621, 625 (1978). Determining the extent to which an employer must reasonably accommodate a disabled employee is the difficult problem.

▪ The commission involved in this case has adopted rules 6.2(6) and 6.3 requiring accommodation of a handicapped employee and describing two methods of accommodation: retention in the same position or reassignment of the employee. We believe the plain language of rule 6.3 prescribes alternate methods of accommodation. The two suggested methods of accommodation are separated by the word "or," a conjunction that functions to indicate an alternative. Consequently we cannot agree with the agency's contention on appeal that the employee's retention in the same position must first be considered by the employer.

▪ Additionally, rule 6.3 is not an exhaustive list of all possible accommodations. Reasonable accommodation by the employer may take many forms. It is only required to an extent that a refusal to provide some accommodation would be discrimination itself. The employer is required to act reasonably. Reasonableness, a flexible standard, must be measured not only by the disabled employee's needs and desires, but also by the economic and other realities faced by the employer. We may examine the employer's motive to determine whether the employer was moved by discriminatory bias rather than business judgment. *See Rancour v. Detroit Edison Co.*, 150 Mich.App. 276, 290, 388 N.W.2d 336, 342 (1986).

While we require accommodation by implication under our statutory scheme, our requirements are not as stringent as those imposed by federal programs, under which Congress grants federal funds but requires the recipients to take affirmative action to employ the disabled and to accommodate their handicaps. *See Fitzgerald v. Green Valley Area Educ. Agency*, 589 F.Supp. 1130, 1136 (S.D.Iowa 1984). Rather, it is more similar to the duty of an employer to

accommodate a religious preference of an employee. In *Transworld Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Supreme Court indicated the employer need not carve out a special exception to its employee seniority system to accommodate an employee's religious obligations, nor was it required "to bear more than a *de minimus* cost" in its obligation to accommodate the employee. *Id.* at 84, 97 S.Ct. at 2277, 53 L.Ed.2d at 131; *see also King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 602 (Iowa 1983). While we do not intend to suggest that such a low standard of accommodation is sufficient in every circumstance, the case points out that a different degree of accommodation may be required when the legislation affirmatively requires accommodation as a condition to a grant of funds.

▪ Under our statute barring a governmental unit from discrimination against disabled employees, we require a reasonable effort by the employer to aid the employee in remaining employed. The district court concluded that the employer in carrying out this task "needs some flexibility in fashioning and implementing a compatible alternative." We agree. The agency, on the other hand, placed a higher degree of emphasis on its perception of the employee's feelings and desires, and on the employer's lack of sensitivity to the particular characteristics of the employee. Certainly, such matters must be considered; however, they are only two factors out of many that comprise the appropriate basis for a decision on the issue of reasonable accommodation.

▪ Our review of the entire record made before the agency causes us to agree with the district court's conclusion that there was not substantial evidence that the employer failed to make a reasonable accommodation of the employee's disability. The employee was retained in his position as ward attendant for six months after he could not meet the job requirement of driving. The employer later placed him in another job which paid the same wage.

When his disability prevented him from carrying out the responsibilities of this second job, the employer placed him on leave, with pay, until he regained his driver's license and was able to resume his ward attendant position.

During the six months that he remained an attendant, but could not drive, the employer was faced with complaints of fellow employees who were forced to carry out the entire driving responsibility. The employee could not dispense medicines, nor could he supervise the female residents' showers. The other two attendants had to carry out these duties and when they also had to transport patients, a hardship was placed on the fellow employees and the employer.

The record does not indicate that the employer was motivated by discriminatory bias. Rather, the employer made an effort to keep the employee on the payroll. This is unlike the *Foods* case, in which the employer terminated the employee rather than attempt to accommodate the employee's handicap. Here the employee was consulted and given alternatives. While he may have preferred different treatment, he accepted one of the alternatives, which allowed him to receive his full income throughout this period. In summary, we cannot find substantial evidence, when the record is viewed as a whole, to support the agency's decisions that the employee met his burden of proving disability discrimination and that the employer failed to reasonably accommodate the employee's disability.

AFFIRMED.