Michele SIERRA, Appellee,

v.

EMPLOYMENT APPEAL BOARD and Eagle Food Centers, Appellants.

No. 92–1912.

Supreme Court of Iowa.

Nov. 24, 1993.

Robert P. Boeye and Carl A. Walker of Califf & Harper, P.C., Moline, IL, for appellant employer.

William C. Whitten, Employment Appeal Bd., for appellant bd.

Tommy Miller of HELP Legal Assistance, Davenport, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

SNELL, Justice.

On this appeal we decide whether appellee, Michele Sierra, who was placed on forced medical leave from her job with Eagle Food Centers because she suffered from epileptic seizures, is eligible for unemployment benefits. An administrative law judge found Sierra unable to work and thus ineligible for unemployment compensation under Iowa law. The district court found Sierra able to work and reversed the agency decision. The employer, Eagle Food Centers ("Eagle"), along with the Employment Appeal Board, appeal from the district court's reversal of the action pursuant to the Iowa Administrative Procedure Act. We affirm.

I. *Scope of Review.*

■ The Iowa Administrative Procedure Act sets forth the standards for judicial review of agency action. Iowa Code § 17A.19 (1991). "An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal." *Id.* § 17A.20. "The appeal shall be taken as in other civil cases...." *Id.* In "other civil cases," our standard of review is for errors at law. *Id.* Thus, our duty in this case "is to correct errors of law made by the district court." *Foods, Inc. v. Iowa Civil Rights Comm'n,* 318 N.W.2d 162, 164–65 (Iowa 1982). The district court when reviewing final agency action is itself functioning as an appellate tribunal. *Id.* at 165.

Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court.

*Jackson County Pub. Hosp. v. Public Employment Relations Bd.,* 280 N.W.2d 426, 429–30 (Iowa 1979).

■ The factual findings of an administrative tribunal will be upheld if supported by "substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(f). A reviewing court gives deference to agency findings of fact. *Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n,* 401 N.W.2d 192, 196 (Iowa 1987). However, we will set aside agency findings if the record clearly shows the agency decision unjustified. *Id.*

## II. *Issues.*

Eagle raises two issues: first, whether there was substantial evidence in the record as a whole to support a finding that Sierra is unable to work, and second, whether the district court correctly applied this court's decision in *Foods, Inc.,* by holding that if "reasonably accommodated" Sierra would be able to work. *See Foods, Inc.,* 318 N.W.2d at 167.

## III. *Factual Record.*

The record before the administrative agency shows that Sierra worked for Eagle for three years. Sierra started as a grocery bagger for Eagle. Later she was promoted to a position as a cashier. On July 29, 1991, she suffered an epileptic seizure while working. Eagle placed Sierra on forced medical leave. In the preceding eighteen weeks Eagle documented six seizures suffered by Sierra. Sierra admits periodically forgetting to take her medicine which controls her condition. In the three years Sierra worked for Eagle, however, Sierra never injured herself or injured another person as a result of her seizures.

Sierra's physician, Dr. Daniel Johnson, believed Sierra was able to work provided she did not drive, climb heights, or operate dangerous equipment. Dr. Robert Milas also medically evaluated Sierra at the request of Eagle. According to Dr. Milas, Sierra had "a considerable problem with compliance and this is a major factor in controlling her seizure disorder." Dr. Milas also found Sierra a risk to herself in an employment setting due to the danger of "frequent falls." Dr. Milas concluded:

> [W]hile it cannot be categorically stated it is unsafe for this patient to have any form of occupation I feel the frequent seizures do pose a significant risk to the patient and this has to be taken into account with regard to any employment the patient engages in.

Sierra testified that she does not have grand mal seizures and she can sense when her seizures are about to occur. During the time she worked for Eagle, Sierra always went to a fellow employee when she sensed an oncoming seizure. The employee would relieve Sierra for five minutes until her seizure passed. After her placement on forced medical leave, Sierra filed for unemployment benefits with the job service division of the Iowa Department of Employment. A job service division representative found Sierra unable to work and ineligible for unemployment compensation. Her benefits were discontinued and she was ordered to pay back some benefits she had received.

Sierra appealed the decision of the job service representative. An administrative law judge (ALJ) held a hearing on Sierra's eligibility for unemployment benefits. In its decision the ALJ made three findings. First, the ALJ found "[t]he claimant is an epileptic and has suffered several seizures weekly." The ALJ found Sierra "did not take her medication on a regular basis, which resulted in seizures." Finally, the ALJ found "[t]here are no employment opportunities for this claimant because of her illness and because of her noncompliance with her requirement to take medication." The ALJ also held, as a matter of law, that this court's decision in *Foods, Inc.,* requiring employers to reasonably accommodate workers with disabilities, was inapplicable to this case. The ALJ held *Foods, Inc.* applied only to discharge from employment cases. It held *Foods, Inc.* inapplicable to cases involving determinations of an employee's ability to work for the purpose of determining the employee's eligibility for unemployment compensation.

The district court, on appeal, reversed the decision of the ALJ. First, the court took issue with the ALJ's factual findings, particularly with regard to the medical evidence in the case. The court also held the ALJ erred as a matter of law for the reason that our decision in *Foods, Inc.,* was applicable to Sierra's case. The court found that with reasonable accommodation Sierra was able to work and eligible for unemployment benefits.

## IV. *Unemployment Compensation Law.*

Iowa Code section 96.4 provides in relevant part:

> An unemployed individual shall be eligible to receive benefits with respect to any

week only if the division of job service finds that:

. . . .

3. The individual is able to work, is available for work, and is earnestly and actively seeking work.

Iowa Code § 96.4(3).

■ An ability to work is the first of three prerequisite findings that must be made in order for an individual to be eligible for unemployment benefits. *Id.* To be found able to work, "[a]n individual must be physically and mentally able to work in some gainful employment, not necessarily in the individual's customary occupation, but which is engaged in by others as a means of livelihood." *Geiken v. Lutheran Home for the Aged Ass'n,* 468 N.W.2d 223, 225–26 (Iowa 1991); *see also* Iowa Admin.Code r. 345–4.22(1)(b) (1988) ("[T]he individual must be physically able to work, not necessarily in the individual's customary occupation, but able to work in some reasonably suitable, comparable, gainful, full-time endeavor, other than self-employment, which is generally available in the labor market in which the individual resides.").

### V. *Reasonable Accommodation Law.*

Iowa Code section 601A.6 makes it an unfair or discriminatory employment practice:

to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the . . . disability of such applicant or employee, unless based upon the nature of the occupation. If a disabled person is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminating practices prohibited by this subsection.

Iowa Code § 601A.6(1)(a).

■ In *Foods, Inc.,* this court held that section 601A.6 requires employers to make "reasonable accommodations" for employees with disabilities. *Foods, Inc.,* 318 N.W.2d at 167. "Reasonable accommodation by the employer may take many forms." *Cerro Gordo County Care Facility,* 401 N.W.2d at 197. However, under Iowa law reasonable accommodation "is only required to an extent that a refusal to provide some accommodation would be discrimination itself." *Id.* Employers are only bound to act reasonably. *Id.* Reasonableness is a flexible standard and "must be measured not only by the disabled employee's needs and desires, but also by the economic and other realities faced by the employer." *Id.*

### VI. *Contentions of Parties.*

Eagle contends no accommodation could be made for Sierra in light of her "refusal to take her medicine." Eagle contends Sierra was "unqualified" for employment unless she took her medication.

Eagle also contends substantial evidence exists in the record to support the agency's finding of Sierra's inability to work. Moreover, Eagle argues it was Sierra's burden to prove her ability to work and contends she did not meet this burden. According to Eagle, until Sierra proves she is taking her medicine, she is unable to work.

Sierra contends the record made before the agency clearly demonstrates her ability to work. Sierra points out that her epileptic seizures never interfered with her performance on the job when her condition was reasonably accommodated. Sierra also notes her past successful work as a janitor, a day care worker, and a food service worker. Her epileptic seizures did not interfere in any way with her performance of these duties.

Sierra also argues that under our decision in *Foods, Inc.,* an employer is required to reasonably accommodate employees with disabilities. With reasonable accommodation, Sierra claims she is able to work. Sierra also contends there is no evidence she ever "refused" to take her medications. She admits occasionally forgetting to take her medications but contends the record does not show this occasional forgetfulness caused an increase in the number of seizures she suffered.

## VII. *Analysis.*

■ The ALJ made only three findings in this case. First, the ALJ found "[t]he claimant is an epileptic and has suffered several seizures weekly." However, we find no evidence supporting the agency's finding regarding the frequency of Sierra's seizures. Eagle itself documented only six seizures over a period of eighteen weeks. There is no evidence in the record that Sierra suffered several seizures each week. To the contrary, we believe the record at most indicates Sierra suffered seizures on the average of once every three weeks.

The ALJ further found Sierra "did not take her medication on a regular basis, which resulted in seizures." We find no substantial evidence in the record to support these findings either. The only evidence supporting the finding that Sierra regularly did not take her medicine is found in Dr. Milas's report. Dr. Milas stated, "I feel the patient does have a considerable problem with compliance and this is a major factor in controlling her seizure disorder." There is no explanation regarding what "compliance" means. There is no documentation of the frequency with which Sierra failed to take her medicine. There is no evidence demonstrating that the frequency of Sierra's seizures increased prior to her placement on forced medical leave by Eagle. Dr. Milas's conclusory medical opinion appears to have no evidentiary foundation. Based on the record as a whole, we find no substantial evidence supporting the ALJ's finding that Sierra regularly failed to take her medicine and that this failure resulted in seizures.

Finally, the ALJ found "[t]here are no employment opportunities for this claimant because of her illness and because of her noncompliance with her requirement to take medication." This conclusion necessarily rests on the ALJ's prior two findings. Moreover, we find no evidence in the record demonstrating Sierra's inability to work despite her "illness." Even Dr. Milas would not "categorically" state Sierra was unable to work. To the contrary, the evidence shows Sierra satisfactorily performed her duties at Eagle as well as in her prior occupations. Viewing the record as a whole, we find the ALJ's decision is unsupported by substantial evidence.

■ Moreover, an employer is under a legal duty to reasonably accommodate disabled workers. *Foods, Inc.,* 318 N.W.2d at 167. We believe the district court properly considered this factor in determining Sierra's ability to work. An evaluation of an individual's ability to work for the purposes of determining that individual's eligibility for unemployment benefits must necessarily take into consideration the economic and legal forces at work in the general labor market in which the individual resides. *See Geiken,* 468 N.W.2d at 225–26. The record shows Sierra successfully performed her job if she could be briefly relieved by a fellow employee when she felt the onset of a seizure. Her seizure always passed within five minutes and she would then return to her duties. Accommodating Sierra in this manner in no way interfered with her job performance. In addition, there is no evidence in the record that accommodating Sierra in such a manner caused Eagle unreasonable hardship.

We also find Eagle's claim of a factual distinction with the *Foods, Inc.* case unsupported. Eagle fails to describe for the court how the factual distinctions they raise translate into legal error on the part of the district court. We hold that our decision in *Foods, Inc.* applies to issues concerning unemployment compensation under chapter 96 of the Code and is controlling in this case.

■ We recognize the claimant bears the burden of proving her ability to work for the purposes of receiving unemployment compensation. *See Davoren v. Iowa Employment Sec. Comm'n,* 277 N.W.2d 602, 603 (Iowa 1979). We believe Sierra met her burden of proof. She satisfactorily performed her duties at Eagle. She never injured herself or injured others. Her history of epilepsy never interfered in any other occupation Sierra undertook. Sierra's own doctor places several restrictions on Sierra's employment opportunities. However, there is no evidence in the record that any of these restrictions applied to her work at Eagle. The record clearly indicates that with reason-

able accommodation Sierra is qualified and presently able to perform work.

The decision of the district court is affirmed.

**AFFIRMED.**