Neal D. **COURTNEY**, Appellant,

v.

**AMERICAN NATIONAL CAN CO.**, Appellee.

No. 94–183.

Supreme Court of Iowa.

Sept. 20, 1995.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellant.

Thomas W. Foley of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, American National Can Company (ANC), reassigned plaintiff-employee, Neal D. Courtney, to a lower-paying job after discovering that Courtney was legally blind in one eye. Courtney then sued ANC for disability discrimination. After a bench trial, the district court reached three conclusions: (1) Courtney had a disability; (2) Courtney's disability rendered him unqualified for his former position; and (3) ANC reasonably accommodated Courtney's disability by reassigning him to a different position.

On appeal Courtney claims the evidence fails to support the district court's findings that he was not qualified for his old job and that ANC reasonably accommodated his visual impairment. ANC cross-appeals on the basis that Courtney's visual impairment is not a disability under Iowa law. We affirm on the appeal and therefore find it unnecessary to address the issue raised by the cross-appeal.

I. *Standard of Review.*

Disability discrimination claims tried to the court are reviewed for errors of law. *Boelman v. Manson State Bank,* 522 N.W.2d 73, 76 (Iowa 1994). We are bound by the trial court's findings of fact if they are supported by substantial evidence. *Id.;* Iowa R.App.P. 14(f)(1). In evaluating the evidence, we view it in the light most favorable to upholding the district court's judgment. *Boelman,* 522 N.W.2d at 76.

II. *Background Facts.*

We hold that the following facts found by the district court are supported by substantial evidence. ANC manufactures flexible packaging and plastic bags. In 1971, ANC hired Courtney as an hourly employee. As an hourly employee, Courtney belonged to a collective bargaining unit. During his employment with ANC, Courtney bid into several different positions pursuant to the collective bargaining agreement between the local union and ANC.

In 1980, Courtney bid into a position in the warehouse. As a warehouse worker he drove a forklift the majority of the time.[1] In operating the forklift, he had to maneuver

---

1. The record revealed that at least eighty percent of a warehouse worker's time is spent driving a forklift. Courtney testified that he spent ninety-eight percent of his time operating the forklift. When not driving a forklift, warehouse workers cut cores or operate the stretch wrapper.

around the plant in cramped spaces, narrow aisles and tight corners.

In November of 1987, Courtney saw a physician because he was suffering from severe headaches. The doctor diagnosed fluid behind his right eye and a detached retina. After surgery in late 1987 to address these problems, Courtney's vision was 20/60 in his right eye and 20/20 in his left eye. Vision tests conducted in December of 1988 produced very similar results.

Courtney continued to work in the warehouse position after his surgery without incident until the summer of 1990. Then, between July and September of 1990, Courtney had three accidents with the forklift. He received disciplinary notices for each accident in accordance with the procedures in the collective bargaining agreement. After the third accident, ANC learned that Courtney had a vision impairment. In response, ANC requested that its physician examine Courtney.

The company physician, Dr. Anthony Sciorrotta, examined Courtney and performed tests to measure his eyesight. Dr. Sciorrotta referred Courtney to Dr. Ruben Rullan, an ophthalmologist, for further evaluation. Dr. Rullan reported that Courtney had poor vision in his right eye, poor depth perception and poor peripheral vision. Measurements of Courtney's visual acuity in his right eye showed that his vision had decreased significantly since December of 1988.[2] Dr. Sciorrotta recommended that Courtney should not be allowed to drive the forklift because he posed a safety hazard to himself and other employees.

As a result, ANC disqualified Courtney from the warehouse position and reassigned him to be a bag machine operator. (This position was the only one to which Courtney could transfer under the terms of the collective bargaining agreement.) However, Courtney's vision impairment interfered with his ability to do this job, so he was reassigned to work as a rewinder helper. This move decreased Courtney's hourly wage. Moreover, any hope for advancement has been eliminated, as the collective bargaining agreement prevents a further transfer. Additional facts will be discussed where pertinent.

III. *Procedural History.*

Courtney filed a charge of disability discrimination with the Iowa Civil Rights Commission. *See* Iowa Code § 216.15(1) (1993). Upon issuance of a right-to-sue release, *see id.* section 216.16, Courtney filed this action in district court.

In the trial court, Courtney alleged that ANC disqualified and reassigned him because of his vision impairment in violation of Iowa Code section 216.6. ANC admitted that it disqualified Courtney because of his vision impairment but contended that this impairment prevented Courtney from safely performing the essential functions of his position. ANC also claimed Courtney's impairment was not a "disability" as that term is defined by Iowa law.

Following a bench trial, the court ruled in favor of ANC. Judgment was rendered before our decision in *Boelman v. Manson State Bank,* 522 N.W.2d 73 (Iowa 1994). In *Boelman,* we adopted an analytical framework for disability claims, such as Courtney's, modeled upon the federal judiciary's interpretation of section 504 of the Rehabilitation Act of 1973. *Boelman,* 522 N.W.2d at 79. Because the district court did not have the benefit of the *Boelman* decision, the court analyzed Courtney's claim using a *McDonnell Douglas* pretext analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Although the legal analysis we now apply differs somewhat from that employed by the district court, neither party has requested that the case be remanded to the trial court for the purpose of allowing the trial court to apply *Boelman.* We agree with the parties' implicit assumption that such a remand is

---

**2.** Tests conducted by Courtney's own doctor a month after Dr. Rullan's examination and again in March of 1993 were consistent with Dr. Rullan's test results. With correction, the vision in his right eye measured 20/200. With or without correction, Courtney could only see fingers at one and one-half feet with his right eye. The vision in his left eye remained essentially the same.

unnecessary. The district court's factual findings and legal conclusions are adequate to allow us to evaluate Courtney's claims on appeal within the *Boelman* analytical framework.

### IV. *Qualified for the Job.*

■ To prevail on his claim Courtney had to prove three elements: (1) he had a disability; (2) he was qualified for his job; and (3) he was reassigned to a lower-paying job because of his disability. *Boelman,* 522 N.W.2d at 81. Although the district court held that Courtney was disabled and that ANC assigned him to a different job because of his disability, the trial court also concluded that Courtney's vision had deteriorated to the point that he was unqualified to drive a forklift in a crowded warehouse. Courtney challenges this conclusion on appeal.

■ A person is qualified within the meaning of chapter 216 if the person "can perform the essential functions of the job 'in spite of' his or her disability." *Id.* at 80. Whether an individual is qualified for a particular job, despite his or her disability, requires an individualized inquiry. *Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 385 (Iowa 1990); *cf. School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 1130, 94 L.Ed.2d 307, 320 (1987) (interpreting section 504 of the Rehabilitation Act of 1973). This inquiry must consider "[t]he nature and extent of a disability, the needs of a particular job, and the impact of disability on a person's ability to perform that job." *Frank v. American Freight Sys., Inc.,* 398 N.W.2d 797, 801 (Iowa 1987). Moreover, an employer may not base its employment decisions on "prejudice, stereotypes, or unfounded fear." *Arline,* 480 U.S. at 287, 107 S.Ct. at 1131, 94 L.Ed.2d at 320. Consequently, a blanket exclusion of a particular class of disabled persons is not allowed unless the disability necessarily renders all members of the class incapable of performing the essen-

tial functions of the job. *Frank,* 398 N.W.2d at 801.

A. *Was the district court's decision inconsistent?* Courtney's first challenge to the trial court's conclusion that he was not qualified to operate a forklift arises from the court's use of the *McDonnell Douglas* analysis. The trial court held that Courtney proved, as part of his prima facie case, that he was qualified for the forklift position.[3] However, in considering ANC's nature-of-the-occupation defense,[4] the court held that Courtney was not qualified because of his visual impairment. Courtney argues that these findings are inconsistent. We disagree.

■ In evaluating Courtney's prima facie case, the trial court found that Courtney was qualified for his job "without reference to his disability." However, when the court later considered ANC's nature-of-the-occupation defense, it held that Courtney was not qualified because his vision had deteriorated to the point that he could not safely operate a forklift. No inconsistency exists between these findings because the trial court used the term "qualified" in two different ways. In Courtney's prima facie case, qualification was decided without consideration of Courtney's disability, whereas in analyzing ANC's defense, qualification included consideration of his disability.

■ This perceived problem will not arise in the future because under the *Boelman* analysis the plaintiff must prove that he can perform the essential functions of the job *in spite of his disability. Boelman,* 522 N.W.2d at 80. The burden to prove qualification remains on the plaintiff and does not shift to the defendant.

B. *Is the district court's factual finding supported by substantial evidence?* Courtney also argues that the evidence showed that ANC relied on the stereotypical assumption that a person who is legally blind in one

---

3. Before our *Boelman* decision, an employee had to establish a prima facie case of discrimination that included proof the employee was qualified for the job from which he or she was terminated. *Henkel Corp. v. Iowa Civil Rights Comm'n,* 471 N.W.2d 806, 809 (Iowa 1991).

4. Under our prior analytical framework for disability discrimination claims, an employer could rebut a prima facie case of discrimination by proving that the discrimination was based on the nature of the occupation. *Frank,* 398 N.W.2d at 800–01.

eye cannot operate a forklift safely. He claims that ANC did not make an individualized inquiry based upon objective evidence and reasonable medical judgment. ANC asserts two points: (1) the trial court found ANC had reasonably relied on Dr. Sciorrotta's medical opinion in deciding that Courtney could not safely drive a forklift; and (2) there was substantial evidence to support this finding.

We note initially that the trial court concluded that "[c]orrectable vision in both eyes is necessary" to operate a forklift. Although this statement, taken out of context, might suggest reliance on an unfounded stereotype, the court's entire discussion reveals ANC undertook an individualized inquiry. The district court made the following factual findings which are supported by substantial evidence.

When Courtney's supervisors first learned of his visual impairment, they sought a medical opinion from the company doctor, Dr. Sciorrotta. Dr. Sciorrotta was familiar with the duties of persons working in the warehouse. He had observed their work and had toured the plant. He was also familiar with how forklifts operated in an industrial setting. Dr. Sciorrotta advised ANC that blindness in one eye would not necessarily disqualify a person from operating a forklift. However, he believed based upon Courtney's recent record of accidents,[5] safety concerns dictated that ANC should not allow Courtney to operate a forklift. Dr. Sciorrotta reasonably concluded that Courtney's visual impairment caused or contributed to Courtney's accidents in the warehouse. It was reasonable for ANC to accept Dr. Sciorrotta's recommendation that Courtney not be allowed to drive a forklift due to the potential safety hazard. The trial court stated its conclusion:

Unfortunately, Courtney's vision has deteriorated to the point he is not qualified to drive a forklift *in a crowded warehouse.* His right eye blindness substantially interferes with his ability to lift pallets onto high racks because of his poor depth perception. His limited field of vision interferes with his ability to see production equipment and co-employees when he drives his forklift in reverse. As a warehouseman, Courtney would more likely than not cause future problems in job performance and interruption of his employer's business.

(Emphasis added.)

▮▮▮ These facts and this analysis reflect an individualized inquiry based on objective evidence and reasonable medical judgment. Under this record, we cannot hold as a matter of law that ANC relied on a stereotypical assumption that full vision in both eyes was required to operate a forklift.[6]

▮▮▮ We acknowledge, as Courtney argues, that ANC's proof, particularly Dr. Sciorrotta's testimony, was challenged by Courtney and even contradicted by Courtney's medical witnesses. However, it was for the district court, as the trier of fact, to determine the weight of the evidence. *Claus v. Whyle,* 526 N.W.2d 519, 524 (Iowa 1994). We find the record contains evidence to sustain the trial court's findings and these findings support the court's legal conclusions. Therefore, no basis exists to reverse the district court's conclusion that Courtney was not qualified to work in the warehouse driving a forklift.

## V. *Reasonable Accommodation.*

The district court concluded ANC had reasonably accommodated Courtney's disability. This conclusion was based upon the following factual findings for which there is substantial support in the record. Courtney wanted

**5.** Before issuing his report, Dr. Sciorrotta called ANC and obtained information concerning the circumstances of Courtney's three accidents.

**6.** In addition to Dr. Sciorrotta's report to ANC that Courtney's visual impairment would not automatically disqualify Courtney from driving a forklift, testimony from ANC employees support a conclusion that the company did not simply apply a generalized rule that all forklift drivers must have correctable vision in both eyes. The company nurse, who was familiar with the warehouse and the duties of forklift operators, knew in January of 1990 that Courtney could not see out of his right eye. Nevertheless, she allowed him to return to his job in the warehouse. Additionally, the lead warehouse person testified that he did not think it was necessary for forklift operators to have correctable vision in both eyes.

ANC to restructure his job so that he would not have to drive a forklift. However, creating a job that required no forklift driving would increase ANC's labor expenses in more than a de minimis amount. Additionally, even if such a position were created, it would be subject to the bidding procedures of the collective bargaining agreement.

Courtney attacks the district court's legal analysis by arguing that the expense of accommodation should not be measured by a de minimis standard. Instead, analogizing to the Americans With Disabilities Act, he claims accommodation should be required unless it is unduly costly, extensive, substantial or disruptive or would fundamentally alter the nature of the business. *See generally* 29 C.F.R. § 1630.2(p) (1994). We decline Courtney's invitation to alter the requirements for reasonable accommodation developed in Iowa case law.

 Under Iowa law, an employer must make "a reasonable effort" to accommodate an employee's disability. *Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n,* 401 N.W.2d 192, 197 (Iowa 1987). This standard allows an employer some flexibility in fashioning an accommodation. *Id.* In creating an accommodation, the employer should consider the employee's needs and desires as well as the economic and other realities the employer may encounter. *Id.*

 Generally, any expense which is more than de minimis is not required. *Compare Smith,* 456 N.W.2d at 386 *and Brown v. Hy–Vee Food Stores, Inc.,* 407 N.W.2d 598, 599 (Iowa 1987) *with Cerro Gordo County Care Facility,* 401 N.W.2d at 197 ("we do not intend to suggest that such a low standard of accommodation [referring to de minimis cost] is sufficient in every circumstance"). Additionally, an Iowa employer may reject an accommodation that substantially impinges on the rights of other employees. *Smith,* 456 N.W.2d at 386; *Frank,* 398 N.W.2d at 803. Furthermore, we have repeatedly recognized that an accommodation which changes the essential nature of the job is unreasonable. *Boelman,* 522 N.W.2d at 81; *Henkel Corp. v. Iowa Civil Rights Comm'n,* 471 N.W.2d 806, 811 (Iowa 1991); *Smith,* 456 N.W.2d at 386.

 We need not decide whether an accommodation is unreasonable simply because it involves more than a de minimis expense. That is not the situation here. The accommodation Courtney desires would carry not only a more than de minimis cost but would also unreasonably impinge on the rights of other employees. Unless ANC ignored the contractual bidding rights of other employees, it could not automatically assign Courtney to the newly-created warehouse position. Additionally, driving a forklift was not a marginal component of Courtney's warehouse job: it occupied ninety-eight percent of his working hours. Therefore, eliminating forklift driving from Courtney's job duties would alter the *essential nature* of the job—an accommodation not required under Iowa law. For these reasons, the district court did not err in concluding ANC reasonably accommodated Courtney's disability.

Although we have not expressly discussed in this opinion every argument advanced by Courtney, we have considered each argument made. Finding no basis for reversal in any of them, we affirm the judgment in favor of ANC.

**APPEAL AFFIRMED; CROSS–APPEAL MOOTED.**