Jesse ZEPEDA, Appellant,

v.

FORT DES MOINES MEN'S CORRECTIONAL FACILITY, DEPARTMENT OF CORRECTIONAL SERVICES, STATE OF IOWA, Appellee.

No. 97–283.

Supreme Court of Iowa.

Nov. 25, 1998.

Ta–Yu Yang and Jeanne K. Johnson, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and H. Loraine Wallace, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

This is a statutory claim of discrimination under the Iowa civil rights Act, Iowa Code chapter 216 (1995). Although the trial court based its judgment for defendant on several grounds, we choose to consider only one. We rest our affirmance on a correct finding that the defendant took no adverse employment action against the plaintiff.

Plaintiff Jesse Zepeda was an inmate at the Fort Des Moines correctional facility (facility), serving time for third-offense operating a motor vehicle while intoxicated (OWI). He was transferred there from Iowa's medical and classification center at Oakdale. Zepeda entered an OWI program at the facility that included outside employment.

Zepeda's records, forwarded from Oakdale, indicated he had tested positive for hepatitis C. The facility has a policy prohibiting disclosure of medical information to persons outside the facility, but the staff was unsure whether or how to apply it in Zepeda's situation. The staff knew only that he had tested positive for hepatitis C, and would be going out in the community on work release. They did not know what type of jobs Zepeda would be undertaking. So a staff member called the Oakdale facility for advice. Medical staff at Oakdale explained that hepatitis C is a contagious disease and, if Zepeda did not disclose his condition to his employer, the Fort Des Moines facility staff should do so. During meetings between the facility and Zepeda regarding his employment search, Zepeda was told the staff would disclose his hepatitis status if he did not. Zepeda objected to telling any employer or potential em-

ployer about his hepatitis, and claimed he did not have the disease.

As part of his program with the facility, Zepeda obtained a position through Olsten Staffing Services, Inc., a temporary employment agency. Olsten hires people on a temporary basis and places them with its various customers. Olsten assigned Zepeda to Neodata Services, Inc. where he was put to work sorting magazines. Two days later members of the facility staff told Olsten that Zepeda tested positive for hepatitis C, and Zepeda was promptly removed from his assignment. Zepeda claims he was fired; Olsten claims he was to be reassigned if he could obtain a doctor's release. There is strong support in the record for Olsten's version. Three days later, when Zepeda produced a doctor's release stating he did not have hepatitis, Olsten reassigned him to Neodata where he was to begin work a week later. He did not return there however, but instead took a higher paying job elsewhere. Several weeks later Zepeda successfully completed his OWI program at the facility and was released.

Zepeda brought this suit against the facility and also against others who are no longer involved. He appeals a judgment for the facility entered after a bench trial.

██ I. Disability discrimination claims tried to the court are reviewed on error. *Courtney v. American Nat'l Can Co.*, 537 N.W.2d 681, 683 (Iowa 1995). The appellate court is bound by the trial court's findings of fact if they are supported by substantial evidence. *Id.* The reviewing court views the evidence in the light most favorable to upholding the district court's judgment. *Id.*

██ II. We can assume, though we do not hold, that Zepeda had a perceived disability and that the facility's disclosure of its understanding of Zepeda's medical condition was discriminatory. We even assume that Olsten, Neodata, or both of them, fired Zepeda on the basis of what the facility reported concerning his hepatitis.

Zepeda's claim is that the facility engaged in an unfair employment practice in violation of Iowa Code section 216.6 by unlawfully terminating his employment because of his perceived disability. The fatal flaw in the claim is that the alleged acts that make up the claim do not amount to adverse employment practice on the part of the facility. The most that can be said against the defendant facility is that its conduct in advising Zepeda's employer may have provided information or misinformation that prompted employers to fire him.

The defendant facility did not thereby become Zepeda's employer, or "discriminate in employment," as contemplated in Iowa Code section 216.6(1)(a). Olsten's actions were its own, and did not come under the control of the facility. *See Sahai v. Davies*, 557 N.W.2d 898 (Iowa 1997). In *Sahai* an employee was denied a job on the basis of advice given by a physician, who believed no pregnant woman should undertake the work involved. The physician passed this advice on to the employer. We assumed employers would have violated the civil rights Act if they rejected a job application on such a basis. We however rejected the civil rights claim against the physician, even though it appears the physician's advice controlled the employer's decision not to hire the plaintiff. *Id.* at 901.

Although Zepeda vigorously contends otherwise, the defendant physician in *Sahai* came closer to being responsible under the civil rights Act than the facility does. Zepeda seeks support for his position in the fact that the facility violated its own policy when it disclosed confidential medical information that may have been incorrect. But these matters do not bear on whether the facility was responsible for the action of which Zepeda complains. The present case is a step farther removed because, unlike the physician in *Sahai,* the facility gave no directions to the employer. Zepeda is, in the parlance of former times, throwing rocks at the wrong cathedral.

AFFIRMED.