June G. PROBASCO, Petitioner,

v.

IOWA CIVIL RIGHTS COMMISSION and Hy-Vee Food Stores, Inc., Respondents.

HY-VEE FOOD STORES, INC., Appellant,

v.

IOWA CIVIL RIGHTS COMMISSION and June G. Probasco, Appellees.

No. 86-1852.

Supreme Court of Iowa.

March 16, 1988.

Rehearing Denied May 6, 1988.

James D. Meyer of Meyer Law Firm, Chariton, and Stanley E. Craven of Spencer, Fane, Britt & Brown, Kansas City, Mo., for appellant.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for appellee Iowa Civil Rights Comn.

Garry D. Woodward and James C. Davis of Woodward, Davis & Rossi, Des Moines, Iowa, for appellee June C. Probasco.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and SNELL, JJ.

SNELL, Justice.

Petitioner June G. Probasco is a former employee of respondent Hy-Vee Food Stores. During her employ, she developed a chronic susceptibility to bronchitis. As a result of this condition, Probasco's physicians advised her and Hy-Vee that she not work in certain conditions, most notably around intense chemical fumes, dust, or poor ventilation. On April 20, 1981, Hy-Vee terminated Probasco's employment,

citing their inability to change Probasco's work environment and the unavailability of other employment with them. Subsequent proceedings before the Iowa Civil Rights Commission concluded that Hy-Vee had discriminated against Probasco on the basis of her respiratory condition, which the commission found to be a "disability" as that term is used within the Iowa Civil Rights Act. The district court affirmed on judicial review and this appeal followed.

Our review of the district court's disposition of this case is clearly limited to the correction of legal errors. *See, e.g., Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n*, 401 N.W.2d 192, 196 (Iowa 1987). In deciding whether the district court correctly applied the law, we examine the record before the agency and look to the standards of Iowa Code section 17A.19(8) to determine whether our conclusions are the same as those of the district court. *E.g., Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 472 (Iowa 1983).

Iowa Code section 601A.6 prohibits, as an unfair and discriminatory practice, the discharge of any employee because of the employee's disability, unless the discharge was "based upon the nature of the occupation." "Disability," for the purposes of this prohibition, is defined as "the physical ... condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation." Iowa Code § 601A.2(11) (1981). Further content is given to this definition by the following administrative rules:

(1) The term "substantially handicapped person" shall mean any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

(2) The term "physical or mental impairment" means:

a. Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine; or....

(3) The term "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

240 Iowa Admin. Code 6.1(1)–(3) (1980) (now located at 161 Iowa Admin. Code 8.26(1)–(3) (1987)).

Hy-Vee presents a narrow issue for our review: Did the district court err in affirming the Civil Rights Commission's conclusion that Probasco was a "substantially handicapped" individual as that status is defined by the above-noted statute and rules. Hy-Vee concedes that Probasco's condition constitutes an impairment within these rules; it argues, however, that the impairment does not "substantially limit" any of Probasco's major life activities within any meaning of that phrase consistent with the statute. Hy–Vee contends, therefore, that Probasco does not belong to a group protected by the statute and, accordingly, may not obtain relief provided therein. *See Brown v. Hy-Vee Food Stores, Inc.*, 407 N.W.2d 598, 599 (Iowa 1987). If such is the case, the commission would have no jurisdiction over Probasco's complaint, *see Sommers*, 337 N.W.2d at 472; 240 Iowa Admin. Code 1.1(6)(e) (1980) (now located at 161 Iowa Admin. Code 2.1(6)(b) (1987)), and the district court would be in error for not reversing the commission's order and dismissing the complaint.

In determining the reach of the Iowa Civil Rights Act, we are guided by familiar principles. In cases of statutory construction, the judicial task is to interpret words of the relevant statute in light of the purposes the legislative branch sought to serve by its enactment. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 118, 103 S.Ct. 986, 995, 74 L.Ed.2d 845, 858, *reh'g denied*, 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983); *In re Estate of Keegan*, 369 N.W.2d 447, 450 (Iowa 1985). To ascertain the legislative intent in construing a statute, a court may

properly consider not only the language of the statute, but also its subject matter, object sought to be accomplished, purpose to be served, underlying policies, remedies provided, and consequences of various interpretation. *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1332 (8th Cir.1985); *see Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985). In order to determine and effectuate legislative intent, a statute must be considered in its entirety. *Kifer*, 777 F.2d at 1332; *State v. Whetstine*, 315 N.W.2d 758, 760 (Iowa 1982). Remedial legislation should be construed liberally consistent with its statutory purpose. *International Nutrition Inc. v. U.S. Dept. of Health and Human Servs.*, 676 F.2d 338, 341 (8th Cir.1982); *State ex rel. Turner v. Koscot Interplanetary Inc.*, 191 N.W. 2d 624, 629 (Iowa 1971). This mandate for a liberal construction is written directly into the Civil Rights Act. Iowa Code section 601A.18 (1981). In addition, we note that although we generally give weight to an administrative agency's rules, we do not give weight to an agency's interpretation of those rules if that interpretation is inconsistent with the enabling statute. *E.g., Meads v. Iowa Dep't of Social Servs.*, 366 N.W.2d 555, 558 (Iowa 1985).

On several occasions, our courts have looked to the federal system for guidance in construing our similar civil rights legislation. *See King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983); *Iowa Beer & Liquor Control Store 1023 v. Iowa Civil Rights Comm'n*, 337 N.W.2d 896, 897 (Iowa App.1983). We employ this approach again today because, as demonstrated below, the civil rights legislation and implementing rules involved in this case mirror those adopted on the federal level.

■ The Iowa statute involved here prohibits employment-related discrimination on the basis of an individual's "disability." Iowa Code § 601A.6(1) (1981). The term "disability" is statutorily defined in terms of a condition "which constitutes a substantial handicap...." Iowa Code § 601A.2(11) (1981). As is done on the federal level, we too may assume for the purposes of our statute that a person with a "substantial handicap" is a "handicapped individual." *See* 45 C.F.R. § 84.3(e) (1987) (" 'Handicap' means any condition or characteristic that renders a person a handicapped person as defined in [45 C.F.R. § 84.3(j) ]."). This latter phrase—"handicapped individual"—is the subject of additional clarification on the federal level, and we believe that today this clarification should be incorporated into our construction of the pertinent sections of the Iowa Civil Rights Act.

The analogous federal law governs the employment of handicapped persons under federal contracts, *see* 29 U.S.C. § 793 (1981), and prohibits discrimination against handicapped individuals in federally funded programs and activities, *see* 29 U.S.C. § 794 (1981). The statutory definition of "handicapped individual" applicable to these provisions is, disregarding an exclusion for substance abusers not pertinent to this case, identical to that of "substantially handicapped person" contained in our above-mentioned administrative rules. *Compare* 29 U.S.C. § 706(7)(B) (1981 Supp.) *with* 240 Iowa Admin. Code 6.1(1) (1980) (now located at 161 Iowa Admin. Code 8.26(1) (1987)).

The federal administrative rules which attempt to clarify the phrase "handicapped individual" include a definition of "major life activities" substantially identical to Iowa's administrative definition. *Compare* 240 Iowa Admin. Code 6.1(3) (1980) (now located at 161 Iowa Admin. Code 8.26(3) (1987)) *with* 45 C.F.R. § 84.3(j)(2)(ii) (1987), 29 C.F.R. § 32.2 (1987) and 41 C.F.R. § 60–741 Appendix A (1987). Each of these federal administrative interpretations, like Iowa's, endorses a broad understanding of the phrase.

The federal rules, however, proceed a step further than Iowa's and adopt definitions of the phrase "substantially limits," which, as is also the case in the Iowa act, is used in delimiting the protection afforded by the enabling legislation. Those definitions reflect an administrative construction cognizant of the legislation's overriding

concern with discrimination in the employment context:

> The phrase *'substantially limits'* means the degree that the impairment affects employability. A handicapped individual who is likely to experience difficulty in securing, retaining or advancing in employment would be considered substantially limited.

41 C.F.R. § 60–741 Appendix A (1987)

> "Substantially limits" means the degree that the impairment affects ... an individual's employability. A handicapped individual who is likely to experience difficulty in ... securing, or retaining, or advancing in employment would be considered substantially limited.

29 C.F.R. § 32.3 (1987).

Accordingly, although the federal rules, like Iowa's, employ a broad definition of "major life activities," the overriding purpose of the enabling legislation—the protection of employment opportunities, *see* 29 U.S.C. §§ 793 ("Employment under Federal contracts."); 794 ("Nondiscrimination under Federal grants and programs....")—is reflected in the construction given to the phrase "substantially limits." Similarly here, the statute under which the instant matters proceeded reflects in its title the statute's overriding concern: "Unfair employment practices." Iowa Code § 601A.6 (1981). In order that the statute's construction be consistent with this purpose, we think the phrase "substantially limits" must be interpreted to mean the degree to which the impairment affects an individual's employability. *Cf.* 29 C.F.R. § 32.3 (1987); 41 C.F.R. § 60–741 Appendix A (1987). We recognize this holding is in ostensible tension with a literal reading of that part of the statutory definition which requires the individual's handicap to be "unrelated to such person's ability to engage in a particular occupation" in order to qualify as a protected "disability." Iowa Code § 601A.2(11) (1981). We have rejected such a literal reading, however, and have held, consistent with our decision today, that the statute protects those with "substantial physical impairment[s] affecting [their] ability to perform on the job."

*Halsey v. Coca-Cola Bottling Co.*, 410 N.W.2d 250, 252 (Iowa 1987).

*Forrisi v. Bower*, 794 F.2d 931, 934 (4th Cir.1986), contains a discussion of the purpose of disability discrimination legislation which we think is consistent with both our statute and our holding today. Such legislation, said the court

> assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

The degree to which an impairment substantially limits an individual's employment potential must be determined with reference to a number of factors: the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job training, experience and expectations. *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088. 1100–01 (D. Hawaii 1980); *See Forrisi*, 794 F.2d at 933; *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985). An impairment that interferes with an individual's ability to do a particular job but does not significantly decrease that individual's ability to obtain satisfactory employment otherwise is not substantially limiting within our statute. *See Jasany*, 755 F.2d at 1248; *see also Salt Lake City Corp. v. Confer*, 674 P.2d 632, 636–37 (Utah 1983) (*"one particular job for one particular employer* cannot be a 'major life activity.' ").

The record discloses that Probasco's experience and training is in the secretarial, clerical, and personnel fields. She testified she sought work in these fields follow-

ing her termination from Hy-Vee. She testified that she had never been denied employment on the basis of her health and, in fact, stated that she believed those employment rejections she had received were due to poor references from Hy-Vee. While she claimed she forbore from applying for some jobs because of her condition, she could only list the following examples of positions in which she would be unable to work, in none of which she had ever been employed: receptionist at a beauty shop, secretary in a grain elevator, clerical work in hospital laboratories.

We think this record shows that, as a matter of law, Probasco's employability is not curtailed to the extent which would qualify her as a "disabled person" within the protection of the Iowa Civil Rights Act.

As in *Forrisi v. Bower*, 794 F.2d 931 (4th Cir.1986), which held that an individual's inability to work around particular employment conditions—there, those conditions involving heights—did not so limit the individual's employability so as to bring the individual within the protection of similar legislation, here we think the fact Probasco's condition renders it inadvisable that she work around a particular set of environmental conditions is insufficient to qualify her as a disabled person under our statute. In order to correct errors of law which are dispositive of the case, we may remand the matter to the agency for final appropriate disposition. *E.g., Des Moines Indep. Community School Dist. v. Department of Job Serv.*, 376 N.W.2d 605, 611 (Iowa 1985). As the district court was in error for failing to reverse the agency decision, we reverse and remand to the agency with directions to dismiss Probasco's petition.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who concurs in the result only.