**HENKEL CORPORATION, Appellee,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Appellant,**

**and**

**Stanley Deck, Respondent.**

No. 90–689.

Supreme Court of Iowa.

June 19, 1991.

Bonnie J. Campbell, Atty. Gen. and Teresa Baustian, Asst. Atty. Gen., for appellant.

Larry L. Shepler, Davenport, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

PER CURIAM.

The Iowa Civil Rights Commission appeals from a district court ruling on petition for judicial review reversing the commission's final decision and dismissing Stanley Deck's complaint under Iowa Code chapter 601A (1989). We affirm.

Stanley Deck was an employee of Henkel Corporation in Keokuk, Iowa, from March 1980 until his discharge in January 1985. Deck first worked for Henkel in the area of sanitation. He was subsequently transferred to general plant work and then to the vitamin department.

In April 1983, Deck suffered a mental breakdown which led to repeated hospitalizations and treatment during the remainder of 1983 and into 1984. Deck understood the diagnosis of his condition to be mixed neurosis, anxiety, and depression. In August 1983, Deck applied for, and eventually received, social security disability benefits because of his condition. Deck remained absent from work after his mental breakdown and did not return to work until sometime in late August or early September 1984.

In June 1984, Henkel informed Deck that his employment would be terminated because of his protracted absence from work. Deck filed a grievance concerning his termination. An agreement was eventually worked out between Henkel and Deck's union which set forth a number of conditions governing Deck's return to work. The parties agreed to accept a psychiatrist's opinion as to whether Deck could be re-employed safely for an appropriate trial work period. If Deck had a relapse or recurrence of illness during the trial period, he would be terminated.

In August 1984, Deck reported to a psychiatrist pursuant to the agreement. The psychiatrist recommended that Deck be returned to his usual employment. Deck returned to work and began a clean-up and supply job in the starch-gluten department. In September, Deck broke his foot at work. Deck returned to work sometime in November 1984.

On December 3, 1984, one week after he had been back on the job, Deck was assigned to begin training for the assistant operator's job, the next higher position in the starch-gluten department. Under the terms of the union contract, all employees were required to train so that they could handle at least the next two more skilled positions in their department.

Before reaching the halfway point of his training period, Deck approached his supervisor and expressed a desire to be transferred out of the starch-gluten department. During this conversation the supervisor encouraged Deck to stick with his training and assured him that all necessary training would be provided. A written request for transfer was prepared but no lateral moves were available within the company.

Deck completed the formal training and on December 9, 1984, was scheduled to perform the assistant operator's job on a solo basis. Deck approached the foreman at mid-morning and reported that he felt ill and requested permission to leave the plant and go home. Deck was encouraged by the foreman to remain at the plant, even if that meant doing some other work during the balance of the shift. The supervisor also offered Deck additional time to train and learn the job if that was necessary. Deck declined that offer indicating that he would not be able to perform the job and left the facility.

On December 10, 1984, Deck was suspended from his job. Henkel claimed the suspension was based on safety concerns for other employees and Deck's numerous statements that indicated he did not believe he was capable of performing the assistant

operator's job. Through the course of a subsequent grievance procedure, the suspension was converted to a termination. The union ultimately denied Deck's grievance.

Unsuccessful in his attempts to grieve his suspension and termination, Deck filed a complaint with the Iowa Civil Rights Commission in May 1985 alleging that Henkel illegally discriminated against him on the basis of mental disability in violation of Iowa Code chapter 601A.

Following a hearing, the administrative law judge issued a proposed decision determining that Henkel did not commit an illegal discriminatory act when it terminated Deck.

In April 1989, the Iowa Civil Rights Commission reversed the administrative law judge. The commission found that Henkel discriminated against Deck by suspending and terminating him because of his disability in violation of Iowa Code section 601A.6. The commission awarded Deck back pay and $5000 in compensatory damages for emotional distress. Henkel filed a petition for judicial review.

Upon judicial review, the district court reversed the commission, determining that Deck was neither a disabled person subject to . protection under Iowa Code section 601A.6 nor qualified for the job from which he was discharged. The Iowa Civil Rights Commission has filed this appeal.

■ I. Our review of the district court's disposition of this case is clearly limited to the correction of legal errors. *See, e.g., Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n,* 401 N.W.2d 192, 196 (Iowa 1987). In deciding whether the district court correctly applied the law, we examine the record before the agency and look to the standards of Iowa Code section 17A.19(8) to determine whether our conclusions are the same as the district court. *E.g., Sommers v. Iowa Civil Rights Comm'n,* 337 N.W.2d 470, 472 (Iowa 1983).

■ Iowa Code section 601A.6 prohibits, as an unfair and discriminatory practice, the discharge of any employee because of the employee's disability, unless the discharge was based upon the nature of the occupation. To establish a claim for disability discrimination, the aggrieved employee must first establish a prima facie case of discrimination by a preponderance of the evidence. *Woodbury County v. Iowa Civil Rights Comm'n,* 335 N.W.2d 161, 165 (Iowa 1983). To do this, the employee must establish:

1) that he belonged to a group protected by Iowa Code Chapter 601A (that he had a disability within the meaning of Iowa Code Sections 601A.6(1)(a) and 601A.2(4);

2) that he was qualified for the job from which he was discharged;

3) that, despite his qualifications he was terminated; and

. 4) that, after his termination, the employer hired a person not in the employee's protected class or retained persons with comparable or lesser qualifications who are not in a protected group.

*Trobaugh v. Hy–Vee Stores, Inc.,* 392 N.W.2d 154, 156 (Iowa 1986).

■ Once the employee establishes a prima facie case, the burden of going forward with evidence shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If this burden is carried, the presumption of discrimination drops and the employee must then show that the employer's justification for action was pretextual and that a discriminatory reason more likely motivated the employer. *Wing v. Iowa Lutheran Hosp.,* 426 N.W.2d 175, 178 (Iowa App. 1988). The employee bears the ultimate burden of persuasion of intentional discrimination and that burden never shifts to the employer. *Id.* at 178.

II. The threshold inquiry is whether Deck is a disabled person subject to the protection of the Iowa Civil Rights Act. Iowa Code section 601A.2(4) defines "disability" as "the physical or mental condition of a person which constitutes a substantial handicap . . . ." Further content is given to this definition by administrative rules. Iowa Administrative Code section

161–8.26(1) defines a "substantially handicapped person," in part, as "any person who has a ... mental impairment which substantially limits one or more major life activities, (or) has a record of such an impairment ...." Section 161–8.26(3) of the administrative code defines "major life activities" as "caring for one's self, performing manual tasks, ... learning, and working."

In determining that Deck was not a disabled person subject to the protections of the act, the district court relied heavily on our decision in *Probasco v. Iowa Civil Rights Commission*, 420 N.W.2d 432 (Iowa 1988). In *Probasco*, this court concluded that an employee who had a chronic susceptibility to bronchitis based on work conditions the employer could not reasonably change was not a "disabled" person under the Civil Rights Act. The court emphasized the fact that Probasco could identify only a few jobs where her condition might prevent or restrict her employment. *Id.* at 436–37. Probasco's impairment was not considered a substantial handicap since it "[did] not significantly decrease [her] ability to obtain satisfactory employment otherwise...." *Id.* at 436.

■ Relying on this "employability" standard, the district court concluded that Deck was not "disabled" under the Civil Rights Act. The court found that Deck did not have a substantial handicap since he had been released to work by a psychiatrist and was able to do the clean up and supply job in the starch-gluten department. We, however, disagree with the district court's interpretation of our decision in *Probasco* and its conclusion that Deck was not disabled.

We believe the record supports the Iowa Civil Rights Commission's finding that Deck was disabled within the meaning of the Iowa Civil Rights Act. The record establishes that Deck was initially diagnosed in 1983 as suffering from depression. In fact, the district court conceded that the record suggests that two of Deck's major life activities, work and learning, were affected by his condition. Deck became eligible for social security disability benefits based on his mental impairment and that entitlement continued as of the date of Deck's termination from Henkel. Although Deck was eventually cleared to return to work, the psychiatrist's report stated that "His continued psychiatric care with clear and immediate objectives would be indicated." In January 1985, Deck's psychiatrist indicated that Deck still required medication for his condition. We believe the evidence supports the commission's conclusion that Deck's mental condition substantially limited his ability to work and learn. We reject the implication from *Probasco* that one must be almost unemployable because of one's impairment to be considered disabled. The mere fact that Deck was cleared to work his entry level supply job does not establish that his overall ability to work or learn were still not substantially limited by his condition. Unlike Probasco, Deck's mental condition was generally debilitating and would affect him regardless of the job he might hold. Therefore, we find substantial evidence to support the Iowa Civil Rights Commission's conclusion that Deck was disabled and subject to the protections of Iowa Code chapter 601A.

■ III. The next inquiry concerns whether Deck established that he was qualified for the job from which he was fired. *Trobaugh*, 392 N.W.2d at 156. In assessing an employee's qualifications, we must consider the individual's ability to perform the job in a reasonably competent and satisfactory manner given reasonable accommodation by the employer. 161 Iowa Admin.Code § 8.27(6); *Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n*, 401 N.W.2d 192 (Iowa 1987).

■ After examination of the record in this case, the district court reversed the commission's finding of discrimination due to disability. The district court concluded that the evidence did not support the commission's finding that Deck was qualified to perform his job and that Henkel failed to reasonably accommodate his disability. We agree and therefore affirm the judgment of the district court.

Henkel's plant in Keokuk was a fairly sophisticated operation, requiring only six people per shift to operate the entire plant. As a result, the terms of the union contract in effect at the plant required all employees to train so that they could handle at least the next two more skilled positions in their department. The purpose of this requirement was to insure that trained people would be immediately available to provide relief and to run the plant in the event of illness or vacation by another employee. Although Deck may not have been required to fill one of the next two higher positions often, we find that completion of the training for those positions was a contractually required aspect of his job that was essential based on the economic realities faced by the employer. *Halsey v. Coca–Cola Bottling Co.*, 410 N.W.2d 250, 253 (Iowa 1987). Since Deck failed to qualify for the assistant operator job, the next most skilled position, we must determine whether Henkel attempted to reasonably accommodate Deck's disability before terminating his job based on this failure. We recognize that an employer is not required to change the essential nature of the job in order to accommodate an employee; the employer is only obligated to reasonably accommodate the employee's impairment based on the essential requirements of the job.

Here, Henkel refrained, albeit reluctantly, from terminating Deck while he was undergoing treatment for his mental condition and was unable to work for well over a year. During his training for the assistant operator's job, Deck was permitted to request a transfer out of the starch-gluten department. A request was prepared but no lateral moves within the company were available. Following training, Deck attempted to perform the assistant operator job on a solo basis. When Deck indicated he could not handle the job on a solo basis and desired to go home, Deck was encouraged to remain at the plant doing some other work and was offered additional time to complete the training. Deck refused both offers and went home, indicating that he could not perform the job. During a meeting the next day, Deck again indicated that he did not believe he was capable of performing the assistant operator's job. By rejecting additional training, Deck refused Henkel's reasonable efforts to accommodate him. Deck's desire and ability to do only the supply job in the starch-gluten department is insufficient to establish that he was otherwise qualified to do the job. We agree with the district court that the evidence fails to support the commission's conclusion that Deck's termination was based on his disability and not on his inability to perform the necessary tasks of his job.

IV. We uphold the Iowa Civil Rights Commission's finding that Deck was a disabled person subject to the protection of the Iowa Civil Rights Act, Iowa Code chapter 601A. However, we agree with the district court that there was insufficient evidence to support the commission's finding that Deck met his burden of proving disability discrimination. Deck was not qualified for his job despite Henkel's efforts to reasonably accommodate his mental impairment. Accordingly, we affirm the district court's decision dismissing Stanley Deck's complaint.

AFFIRMED.