Janet M. COLE, Appellant,

v.

STAFF TEMPS and Animal House
Day Care and Preschool, Inc.,
Appellees.

No. 95–1421.

Supreme Court of Iowa.

Oct. 23, 1996.

Dennis M. Lawyer of Lawyer, Lawyer & Associates, Des Moines, for appellant.

John C. Conger of Wiggins, Anderson & Conger, P.C., West Des Moines, for appellee Staff Temps.

Thomas T. Tarbox of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellee Animal House.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

In this disability discrimination action, Janet Cole sued Staff Temps and Animal House Day Care and Preschool (Animal House), alleging violations of the Americans with Disabilities Act (ADA). She claimed that she was unlawfully discriminated against in her employment because of a disability. We find the district court was correct in entering judgment in defendants' favor. We affirm.

I. *Background Facts and Proceedings.*

In 1991, Cole began her employment at Animal House as a child care worker. She was placed on probation in August 1992 for tardiness and excessive absenteeism, in violation of Animal House's attendance policy. Cole suffered a back injury at work in March 1993, causing her to have several physical restrictions imposed by a doctor. In particular, Cole was limited in her ability to lift, mop, or vacuum. She was also diagnosed with fibromyalgia, a painful condition triggered by her back injury that requires medication. In April 1993, Cole was assigned as a teacher at Animal House, in charge of three and four-year-old children. In May 1993, Cole was again placed on probation for tardiness and excessive absenteeism. Those absences were not related to the injury she suffered at work or the fibromyalgia.

In addition to its problems with Cole, Animal House experienced numerous other staff problems because of employee absenteeism. At times, Animal House had difficulty complying with the state regulations on staffing at child care centers. To alleviate this problem, Animal House management decided to terminate all of its employees and obtain its staff through a temporary staffing company, Staff Temps. At a general meeting held on July 21, all Animal House employees were invited to fill out job applications with Staff Temps.

Although Cole did not attend the general meeting, on that same day she did have a private meeting with Kim Shaver, the owner of Animal House, and Valerie Walte, an account executive at Staff Temps. Before the meeting, Staff Temps had already decided not to place Cole at Animal House based on Cole's chronic attendance problem. Nevertheless, Walte wanted to meet with Cole in order for Cole to complete a job application, because Staff Temps intended to find other assignments for her.

During their meeting, Cole's physical injuries and limitations were discussed. Although the parties dispute how this conversation was initiated, Cole did volunteer the information that she had doctor's restrictions and that she could not perform some of the duties that child care workers at Animal House are required to perform. Before the meeting concluded, Walte told Cole that if she became an employee of Staff Temps, she would not be assigned to Animal House, but that Staff Temps would offer other opportunities. After hearing this, Cole became upset and did not complete the application card. Despite later requests from Staff Temps, Cole never applied to work for Staff Temps.

After Cole received the appropriate right-to-sue notices from the Equal Employment Opportunity Commission (EEOC), she filed suit on June 1, 1994 in the Iowa district court. Cole alleged that the conduct of Staff Temps and Animal House: (1) violated the ADA; (2) violated Iowa Code section 85.18 (1993); and (3) constituted retaliatory conduct against public policy. More specifically, she claimed she was not hired because of her physical injuries and limitations. The defendants asserted she was not hired because of her chronic absenteeism, which Cole conceded was not related to her back injury or fibromyalgia. From the record, it appears that only the ADA claims were tried to the court. The defendants never challenged the state court's authority to hear this matter. The district court entered judgment in favor of defendants on June 20, 1995. The court found that:

Janet M. Cole was not hired because of her absenteeism and tardiness. Disability was not a factor. For legitimate reasons she was not retained or hired for placement by Staff Temps with Animal House.... In this case, the reason for not hiring her was not her alleged disabilities....

Cole's motion for new trial was denied, and no motion to enlarge or amend the judgment was made under Iowa Rule of Civil Procedure 179(b). Cole filed a timely notice of appeal. On appeal, Cole challenges the district court's findings and conclusions.

## II. *Scope of Review.*

 The first question we must address is whether the district court had jurisdiction over Cole's federal claims. We are satisfied that Iowa's state courts may properly hear matters under the ADA. We agree with the Ohio Court of Appeals, which stated that:

There is nothing in the text of the Americans with Disabilities Act affirmatively divesting state courts of jurisdiction over actions brought under it, nor do we discern any other reason to suppose that we do not have concurrent jurisdiction with federal courts to construe it.

*Lillback v. Metropolitan Life Ins. Co.*, 94 Ohio App.3d 100, 640 N.E.2d 250, 258 (1994).

 Disability discrimination claims tried to the court are reviewed for errors of law. Iowa R.App.P. 4; *Courtney v. American Nat'l Can Co.*, 537 N.W.2d 681, 683 (Iowa 1995). In our review, we are bound by the district court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(3). Evidence is substantial for purposes of sustaining a finding of fact if a reasonable person would accept the evidence as adequate to reach a conclusion. *Frunzar v. Allied Property & Cas. Ins. Co.*, 548 N.W.2d 880, 884 (Iowa 1996). When reviewing evidence for its substantiality, we view it in the light most favorable to upholding the district court's judgment. *Id.* at 884–85. We are not bound, however, by the district court's application of legal principles or conclusions of law. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995).

## III. *Cole's Claim Involving Disability Discrimination.*

Cole's basic argument on appeal is that the district court erred in finding that disability was not a motivating factor for the treatment she received by Animal House and Staff Temps. Specifically, Cole is claiming that Animal House and Staff Temps violated two different provisions of the ADA: (1) it unlawfully discriminated against her based on her disability; and (2) Shaver and Walte made illegal preemployment inquiries at the private meeting. Before turning to the merits of Cole's claims, we believe it is important to briefly discuss the background of the ADA and its analytical framework.

### A. Background of the ADA.

Before Congress enacted the ADA, the most comprehensive federal legislation prohibiting disability discrimination was the Rehabilitation Act of 1973, which prohibits recipients of federal funds from discriminating against disabled persons. *See* 29 U.S.C. § 794 (1994). The ADA, which became effective on July 26, 1992, was modeled, in part, after the Rehabilitation Act of 1973. It covers employers with fifteen or more employees. 42 U.S.C. § 12111(5) (1994). The ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Since its passage, the ADA has become the most significant federal law prohibiting disability discrimination in employment. 45A Am.Jur.2d *Job Discrimination* § 18, at 107 (1993). Title I of the statute provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a); *see also* Iowa Code § 216.6(1)(a) (Iowa law provides, in part, that it is an unfair or discriminatory employment practice to refuse to hire an applicant or

discharge an employee because of a disability).

■ The ADA may not be construed to apply a lesser standard than is applied under the Rehabilitation Act of 1973, and it may not be construed to invalidate or limit any other federal, state, or local law that provides greater or equal protection for the rights of individuals with disabilities. 45A Am.Jur.2d *Job Discrimination* § 19, at 107. While it focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. 29 C.F.R. pt. 1630 app. at 399 (1995). Further, the ADA "simply establishes parameters to guide employers in how to consider, and take into account, the disabling condition involved." *Id.* at 400. The EEOC is responsible for enforcement of the ADA and has issued regulations to implement the ADA's provisions. *Id.;* 42 U.S.C. § 12116.

B. Analytical Framework of an ADA Claim.

■ In analyzing claims under the ADA, the framework remains the same, whether it involves hiring, firing, or other aspects of the employment relationship. A plaintiff may use the burden-shifting framework identified in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prove discriminatory motive where the reason for the adverse employment action is disputed. *See Price v. S–B Power Tool,* 75 F.3d 362, 364–65 (8th Cir.1996) (emphasizing Eighth Circuit Court of Appeals' use of such framework); *Yockey v. State,* 540 N.W.2d 418, 422 (Iowa 1995) (emphasizing our court's use of this burden-of-proof analysis in civil rights cases); *compare Boelman v. Manson State Bank,* 522 N.W.2d 73 (Iowa 1994) (burden-shifting framework is unnecessary where defendant admits reason for adverse employment decision was related to plaintiff's disability). This method of proof requires a plaintiff to establish her ability to prove a prima facie case. In the absence of an explanation from the employer, this creates a rebuttable presumption of discrimination. The burden of production then shifts to the employer to come for-

ward with a legitimate, nondiscriminatory reason for its actions. Finally, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions. *Price,* 75 F.3d at 365 (citations omitted). At all times, the plaintiff retains the burden of persuading the trier of fact that she has been the victim of illegal discrimination due to her disability. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir.1995); *see also Henkel Corp. v. Iowa Civil Rights Comm'n,* 471 N.W.2d 806, 809 (Iowa 1991).

■ To establish a prima facie case and obtain relief under the ADA, Cole must establish that she: (1) has a disability as defined in 42 U.S.C. § 12102(2); (2) is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996).

C. Analysis of Cole's Claim.

Cole argues that she has met the elements to establish a prima facie case under the ADA. First, Cole must prove that she was disabled. The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Robinson v. Neodata Servs., Inc.,* 94 F.3d 499, 501 (8th Cir.1996); *see also Miller v. Sioux Gateway Fire Dep't,* 497 N.W.2d 838, 841 (Iowa 1993); Iowa Admin.Code r. 161–8.26(1) (1993). Thus, in order to prove disability, a plaintiff must satisfy one of the definitions.

Regarding the first definition, Cole must show that she has a "physical or mental impairment that substantially limits one or more of [her] major life activities." Because the ADA does not define the terms "physical or mental impairment," "substantially limits," or "major life activities," we are guided by the definitions provided in the EEOC regulations issued to implement Title I of the ADA.

29 C.F.R. §§ 1630.2(h), (i), (j); *Aucutt*, 85 F.3d at 1319.

The term "physical or mental impairment" broadly refers to any physiological disorder or condition, affecting one or more of the body systems, or any mental or psychological disorder. 29 C.F.R. § 1630.2(h); *see also Hollinrake v. Iowa Law Enforcement Academy*, 452 N.W.2d 598, 604 (Iowa 1990); Iowa Admin.Code r. 161–8.26(2). The evidence establishes that Cole does have an impairment. All parties agree that Cole suffered a back injury in 1993 and that she is on medication for fibromyalgia.

Even if a person has an impairment, that impairment must substantially limit a major life activity in order to meet the definition of disability. The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Henkel Corp.*, 471 N.W.2d at 810; Iowa Admin.Code r. 161–8.26(3). The term "substantially limits" means "unable to perform [or significantly restricted to perform] a major life activity that the average person in the general population can perform...." 29 C.F.R. § 1630.2(j).

Cole has not presented any substantial evidence that her back injury places a significant restriction on her ability to perform the basic functions of her job. In fact, Cole even testified that, on the day of the private meeting with Shaver and Walte, she did not consider herself disabled. Further, shortly after the meeting Cole obtained a full release from her doctor, lifting all physical restrictions. Thus, despite her contrary representations to Animal House and Staff Temps, Cole apparently had no physical limitations on the date of the private meeting. Based on the record, Cole does not satisfy the first definition of "disability."

Cole also fails to satisfy the second definition of disability, which is intended to ensure that people are not discriminated against either because they had a prior disability or have been misclassified as disabled. *See* 29 C.F.R. pt. 1630 app. at 404; 45A Am.Jur.2d *Job Discrimination* § 213, at 250.

The third definition of disability involves a person who is regarded by an employer as having a disability. *See* 29 C.F.R. pt. 1630 app. at 404. Cole correctly argues that even if the other definitions are not met, she was regarded by Animal House and Staff Temps as having a substantial impairment. A person is " 'regarded as having an impairment' that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. The focus is on the impairment's effect upon the attitudes of others." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (citations omitted); *see also Annear v. State*, 454 N.W.2d 869, 875 (Iowa 1990); Iowa Admin.Code r. 161–8.26(5).

The evidence in the record would support a finding that both Animal House and Staff Temps perceived Cole to have a substantially limiting impairment. Following her injury in March 1993, Cole was placed under various physical restrictions at work, which remained in effect until she was terminated along with all of the other Animal House employees.

These restrictions were substantial because they required Animal House to have another worker present with Cole in the case of an emergency that involved the lifting of a child. Even though these accommodations placed a significant burden on its resources, Animal House took such measures because it felt they were necessary to avoid sanctions for failing to follow state regulations. Further, Cole never sought to have the restrictions lifted while employed at Animal House. Staff Temps perceived the same impairment that Animal House did. Based on the information that Cole volunteered to Walte in the private meeting, Staff Temps also believed that Cole's physical condition limited her ability to work at Animal House without some accommodation.

With the first element of the prima facie case satisfied, we next consider the second element. Cole must prove that she is a "qualified individual with a disability." *See* 42 U.S.C. § 12111(8). The EEOC has developed a two-prong test to determine whether a person is "qualified": (1) whether the person meets the necessary prerequisites of the

job, such as education, experience, and training; and (2) whether the person is able to perform the essential functions of the job, with or without reasonable accommodation. 29 C.F.R. § 1630.2(m); *Benson,* 62 F.3d at 1111–12; *see also Estate of Morgan v. North Star Steel Co.,* 530 N.W.2d 455, 457 (Iowa 1995).

▇ The second prong of that test has two separate components. First, Cole must demonstrate that she can perform the essential functions of the job. *Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir. 1994); *see also Boelman,* 522 N.W.2d at 80. If Cole meets that burden, she is qualified. If Cole cannot perform the essential functions, the second element involves a determination of whether any reasonable accommodation by the employer would enable her to perform those functions. *Id.; see also Boelman,* 522 N.W.2d at 80. At this stage, Cole must produce enough evidence to make a facial showing that reasonable accommodation is possible. *Chandler v. City of Dallas,* 2 F.3d 1385, 1395 (5th Cir.1993); *see also Boelman,* 522 N.W.2d at 80. Upon such a showing, the burden shifts to the employer to demonstrate that the proposed accommodation is unreasonable or imposes an undue hardship. *Vande Zande v. State of Wisconsin,* 44 F.3d 538, 542 (7th Cir.1995); *see also* 42 U.S.C. § 12112(b)(5)(A); *Boelman,* 522 N.W.2d at 82.

▇ Cole clearly meets the prerequisites of the job. She has worked in the field of child care for many years and has received substantial training. However, Cole is not able to perform one of the essential functions of her job. The term "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). In other words, "essential functions" are job duties that are fundamental and not marginal. 45A Am.Jur.2d *Job Discrimination* § 224, at 261. An employer may require every employee to be qualified to perform the essential functions of a job.

In Iowa, chronic absenteeism prevents a person from performing the essential function of regularly attending work. *Falczynski,* 533 N.W.2d at 232. Other jurisdictions

agree that attendance is an essential function of most jobs. *Cf. Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986) (one who does not come to work cannot perform any of his job functions, essential or otherwise); *Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir.1994) (regular attendance is an essential function of a job); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D.Pa.1990) (an employee of any status cannot be qualified for his position if he is unable to attend the workplace, because attendance is necessarily the fundamental prerequisite to job qualification). In *Tyndall,* the United States Court of Appeals for the Fourth Circuit held:

> An employee who does not come to work cannot perform any of [her] job functions, essential or otherwise. Therefore, a regular and reliable level of attendance is a necessary element of most jobs.... *An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA.*

*Tyndall,* 31 F.3d at 213 (emphasis added) (citations omitted).

Irregular attendance "renders a person unqualified for most types of employment and thus susceptible to legitimate termination." *Falczynski,* 533 N.W.2d at 232; *see also Kinkead v. Southwestern Bell Tel. Co.,* 49 F.3d 454, 456 (8th Cir.1995) (excessive absenteeism qualifies as a legitimate, nondiscriminatory reason for plaintiff's termination). In *Higgins v. Iowa Department of Job Service,* 350 N.W.2d 187, 192 (Iowa 1984), we held that habitual tardiness or absenteeism, particularly after warning that termination may result if the practice continues, is grounds for one's disqualification. *Higgins,* 350 N.W.2d at 192.

At Animal House, enforcement of the attendance policy is necessary because of the nature of the work. Animal House must have a sufficient number of child care workers to meet the needs of the facility and to comply with state law. When an employee does not show up for work, it upsets the delicate balance between the number of workers and children, forcing other workers to perform additional duties.

Cole knew of the importance of employee attendance at Animal House. In fact, those requirements were clearly stated in the employee manual provided to the employees. Despite her awareness, however, Cole was absent or late on numerous occasions and was placed on probation twice for attendance policy violations. In fact, Animal House had already decided to terminate Cole because of her absenteeism and tardiness before the July 21 meeting with Staff Temps. Apparently, a termination letter had been prepared, but it could not be delivered before the private meeting because Cole missed work on July 19 and 20.

It is clear that Cole cannot meet one of the essential functions of her job. We agree with the *Tyndall* court that an employee, who cannot meet the attendance requirements of a job, cannot be considered a "qualified" individual protected by the ADA. Cole also failed to introduce any evidence that reasonable accommodations would enable her to meet the essential function of job attendance. Because Cole failed to prove she is a "qualified individual with a disability," we hold that she has not satisfied the second element for a prima facie case.

■■■ The third element of a prima facie case under the ADA requires Cole to show that she "suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises." *See Price*, 75 F.3d at 365. To establish a prima facie case, Cole is not required to prove that she suffered an adverse employment action "because of" a disability; rather, she need only make a showing that gives rise to an "inference" of discrimination on the basis of disability. Even if there appeared to be an inference that Cole was not hired because of her perceived disability, the district court clearly found otherwise. It was for the district court, as trier of fact, to determine the weight of the evidence. *Courtney*, 537 N.W.2d at 686. In its specific findings of fact on this issue, the court found that disability was not a factor. This finding is supported by substantial evidence.

Although we addressed all three required elements for a prima facie case under the ADA, it is important to recognize that if a plaintiff's evidence is deficient on one or more of the elements, he or she has failed to present a prima facie case of disability discrimination.

## IV. Cole's Claim Involving Illegal Preemployment Inquiries.

■■■ Cole's second claim under the ADA is that Animal House and Staff Temps engaged in illegal preemployment inquiries during their private meeting with Cole. Specifically, Cole claims that Walte asked her if she had any physical limitations or health problems and if she had ever received workers' compensation. Animal House and Staff Temps denied the allegations. The district court held there were no violations.

### A. Background on Recruiting and Hiring Practices.

The ADA provides that "a covered entity shall not ... make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A); *see also* Iowa Admin.Code r. 161–8.31(2). However, the ADA does provide an acceptable inquiry. "A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B).

Based on the statute, the ADA strictly forbids an employer from asking a job applicant about disabilities. The EEOC has offered guidance in explaining these provisions:

> At the pre-offer stage, an employer cannot ask questions that are likely to elicit information about a disability. This includes directly asking whether an applicant has a particular disability. It also means that an employer cannot ask questions that are closely related to disability.... [However,] ... an employer may ask whether applicants can perform any or all job functions, including whether applicants can perform job functions "with or without reasonable accommodation."

*EEOC Compliance Manual* § 902, at 5373 (1996). In other words, an inquiry into a job-related function must be narrowly tailored,

and it should not be phrased in terms of disability. *See* 45A Am.Jur.2d *Job Discrimination* § 564, at 528.

As an example, an employer may state its attendance requirements and ask whether an applicant can meet them, but it may not, at the pre-offer stage, ask how many days an applicant was sick. *EEOC Compliance Manual* § 902, at 5374. Also, an employer may not ask applicants about job-related injuries or workers' compensation history. These questions relate directly to the severity of an applicant's impairments and are likely to elicit information about disabilities. *Id.* at 5375.

### B. Analysis of Cole's Claim.

We believe the district court's findings of fact are supported by substantial evidence. Even though the physical limitations were discussed, the district court decided, based on the testimony at trial, that no prohibited inquiries were made by Shaver or Walte. Viewed in the light most favorable to upholding the judgment, we believe the evidence is adequate to support the district court's conclusions.

Cole also claims that the Staff Temps job application illegally inquired into her physical limitations. Specifically, Cole is referring to a section on the application which asks an applicant to list any "job performance limitations." Under the ADA, an employer may make preemployment inquiries about the ability of a job applicant to perform job-related functions. 42 U.S.C. § 12112(d)(2)(B).

We have considered Cole's claims, and we hold that the district court's findings are supported by substantial evidence. We affirm.

**AFFIRMED.**