WATERMAN, Justice
(dissenting).
I respectfully dissent. The district court correctly granted Schwan’s motion for summary judgment based on the undisputed facts. I would affirm. Goodpaster had the burden to prove (1) he has a disability, (2) he is qualified to perform the *19 essential functions of his delivery job with or without accommodation, and (3) the circumstances of his termination raise an inference of illegal discrimination under the Iowa Civil Rights Act of 1965 (ICRA), Iowa Code ch. 216 (2011). See Schlitzer v. Univ. of Iowa, Hosp. & Clinics, 641 N.W.2d 525, 580 (Iowa 2002). Viewing the evidence in the light most favorable to Goodpaster, Schwan’s established the absence of any genuine issue of material fact on each of those elements. The majority fails to explain how Goodpaster could be found disabled when he obtained other employment. Nor does the majority explain why Goodpaster’s requested accommodation — a second driver to retrieve or accompany him on his job driving a delivery truck — is not unreasonable as a matter of law. Employers are not obligated under the ICRA to pay two persons to do the job of one as an accommodation.
I disagree with the majority’s conclusion that Goodpaster’s multiple sclerosis raised a jury question whether he is disabled within the meaning of the ICRA. Although his multiple sclerosis at times interfered with his ability to drive, it is undisputed he was physically capable of other satisfactory work. To the extent his condition does impair his driving, he is unable to perform an essential function of the job. Goodpaster tries to have it both ways: he claims he is disabled because his condition impairs his driving, yet he also claims he can perform the essential functions of the job— most importantly, driving. His requested accommodation — to have “another driver ride along with him when he was ill” — is unreasonable as a matter of law. Finally, Schwan’s had a valid, nondiscriminatory reason to terminate him because he failed to meet his sales quotas. I would not postpone the day of reckoning on a case doomed to dismissal.
The majority neglects to mention that after Schwan’s terminated Goodpaster, he found full-time employment as a laborer and also operated his own painting business on the side. His ability to perform those physically demanding jobs is undisputed. Yet, the majority declares “Good-paster generated a genuine issue of material fact exists regarding whether his multiple sclerosis substantially limited one of his major life activities.” I disagree because it is undisputed Goodpaster is able to maintain full-time employment consistent with his skills and experience. Multiple sclerosis may render a person substantially disabled in some cases, but this is not such a case. To his credit, Go-odpaster has learned to manage his condition and earn an income. He is not disabled.
Iowa Code section 216.2(5) defines “disability” as “the physical or mental condition of a person which constitutes a substantial disability.” A substantial disability is one that “substantially limits one or more major life activities.” Iowa Admin. Code r. 161 — 8.26(1). We have explained that the phrase ‘“substantially limits’ must be interpreted to mean the degree to which the impairment affects an individual’s employability,” despite the broad definition of “major life activities” in Iowa Administrative Code rule 161— 8.26(3). Probasco v. Iowa Civil Rights Comm’n, 420 N.W.2d 432, 436 (Iowa 1988). This interpretation is necessary “[i]n order that the statute’s construction be consistent with [its] purpose”; namely, “the protection of employment opportunities.” Id.; accord Halsey v. Coca-Cola Bottling Co. of Mid-Am., Inc., 410 N.W.2d 250, 252 (Iowa 1987) (noting the ICRA protects those with “substantial physical impairment^] affecting [their] ability to perform on the job”).
*20 Accordingly, “[t]he degree to which an impairment substantially limits an individual’s employment potential must be determined with reference to a number of factors:” (1) “the number and type of jobs from which the impaired individual is disqualified,” (2) “the geographical area to which the individual has reasonable access,” and (3) “the individual’s job training, experience and expectations.” Probasco, 420 N.W.2d at 486. Applying these factors, we have long held that “[a]n impairment that interferes with an individual’s ability to do a particular job but does not significantly decrease that individual’s ability to obtain satisfactory employment otherwise is not substantially limiting within our statute.” Id.; accord Bearshield v. John Morrell & Co., 570 N.W.2d 915, 920 (Iowa 1997) (considering the ICRA claim and noting “‘[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working1 ” (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1997))). Only when a condition is “generally debilitating” and affects an individual “regardless of the job he [or she] might hold” will we find that person disabled under Iowa Code section 216.2(5). Henkel Corp. v. Iowa Civil Rights Comm’n, 471 N.W.2d 806, 810 (Iowa 1991).
In several cases, we have applied the rule that a person is not substantially disabled if the person is able to obtain satisfactory employment. In Probasco, the plaintiff claimed her condition, chronic susceptibility to bronchitis, precluded her from certain positions — “receptionist at a beauty shop, secretary in a grain elevator, clerical work in hospital laboratories.” 420 N.W.2d at 437. We concluded the “record shows that, as a matter of law, Probasco’s employability is not curtailed to the extent which would qualify her as a ‘disabled person’ within the protection of the [ICRA].” Id. (emphasis added) (reversing district court’s affirmance of Iowa Civil Rights Commission’s disability finding). We explained, “the fact Probasco’s condition renders it inadvisable that she work around a particular set of environmental conditions is insufficient to qualify her as a disabled person under our statute.” Id. (citing Forrisi v. Bowen, 794 F.2d 931 (4th Cir.1986), as an example of when “an individual’s inability to work around particular employment conditions — there, those conditions involving heights — did not so limit the individual’s employability so as to bring the individual within the protection of similar legislation”).
In Hollinralce v. Iowa Law Enforcement Academy, we noted the plaintiff was not substantially disabled because, “while [the plaintiff] is limited in this particular job because of his vision, he is not limited in any significant way from obtaining other satisfactory employment.” 452 N.W.2d 598, 604-05 (Iowa 1990) (affirming district court’s dismissal of plaintiffs petition for judicial review). Likewise, in Vincent v. Four M Paper Corp., tried to the bench, we affirmed the district court’s conclusion that the plaintiff “was not substantially limited in the major life activity of working because his ‘physical condition was not so debilitating that he would have been prevented from obtaining other satisfactory employment.’” 589 N.W.2d 55, 59, 61-62 (Iowa 1999). We stated, “[t]he number and type of jobs from which [the plaintiff] was disqualified because of his impairment was fairly limited” and explained that the plaintiffs condition “precluded him] from working at his former position of machine tender, [but] this rather narrow limitation did not significantly curtail [his] ability to obtain other employment not involving heavy equipment or dangerous machinery.” Id. at 62. We concluded the plaintiff
*21 failed to present substantial evidence that his impairment precluded him from performing a class of jobs or a broad range of jobs in various classes as required to establish the existence of a substantial limitation on his ability to work.

Id.

This case is even more clear-cut than Probasco, Hollinrake, or Vincent. It is undisputed that Goodpaster’s condition only occasionally impairs his driving and that he has been able to obtain satisfactory employment elsewhere. He obtained employment full-time as a laborer boring underground power lines, frequently working overtime, and reopened his own painting company. Goodpaster testified at his deposition that he has never been told by any healthcare professional that he has any physical limitation. He admitted, “The only comments that have been made to me by some doctors is when I have [flare-ups], take a little time, go, you know, and relax a second, ... but they never told me I couldn’t do my job.” In 2009, a doctor noted that Goodpaster “has had no exacer-bations with regards to his multiple sclerosis in the last year” and concluded Good-paster “has no significant impairment that would restrict his ability to operate a DOT vehicle.”
The facts of this case are much like those of Brunker v. Schwan’s Home Service, 583 F.3d 1004, 1008 (7th Cir.2009). In that ease, another Schwan’s delivery man with multiple sclerosis alleged Schwan’s terminated him in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12213 (2000). Brunker, 583 F.3d at 1005-06. The federal district court granted summary judgment in favor of Schwan’s, concluding the plaintiff “was not substantially limited in a major life activity.” Id. at 1007. The Court of Appeals for the Seventh Circuit agreed:
Even when viewed in the light most favorable to Brunker, his impairments are not sufficient to show that he is disabled. In May 2003 his physician allowed him to return to work without any restriction at all. Once he returned, he drove the same route by himself and completed it just as quickly as he had in the past. In addition, during Brunker’s stay at the Mayo Clinic, the doctor noted that his dizziness episodes, previously a daily occurrence, were occurring less frequently. Brunker also told the doctor that his writing difficulty was “variable” and his speech slurred “at times when he is tired.” Accordingly, we agree with the district court’s conclusion that the evidence in this record shows only “intermittent” difficulties rather than a substantial limitation on a major life activity.
Id. at 1008.[5] Similarly, Goodpaster’s physicians did not place any restrictions on him. He was able to complete his route upon returning to work, so long as he followed his doctor’s advice to take breaks as needed. And, most importantly, he obtained other employment after his termination.
Undisputed facts establish that Good-paster’s ability to obtain satisfactory employment is not substantially limited. Go-odpaster’s employment prospects are not geographically limited. Cf. Bearshield, 570 N.W.2d at 921-22 (reversing summary judgment for employer because “[a] reasonable person could also find Bearshield is for all practical purposes unable to relocate to find work”). Nor is he disqualified from a wide range of other available jobs *22 or from many jobs for which he has training and experience. See Hollinrake, 452 N.W.2d at 604. Goodpaster is not “generally debilitat[ed].” See Henkel, 471 N,W.2d at 810. Accordingly, he does not meet the definition of “disabled” as a matter of law.
Nor did Schwan’s regard Goodpaster as disabled. To prevail on a “regarded as” claim, Goodpaster needed to prove that Schwan’s viewed him as unable to work in a broad class of jobs. See Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1052 (8th Cir.2005). I agree with the district court’s conclusion: “the evidence does not create a genuine fact issue that Schwan’s perceived Goodpaster as disabled based on some stereotype or myth but, rather, merely reacted to Goodpaster’s complaints and requests when he was ill.” It is also undisputed Schwan’s employed Goodpaster for a year after learning he had multiple sclerosis, demonstrating it regarded Goodpaster as able to perform his job satisfactorily despite his diagnosis. The district court properly rejected Goodpaster’s “regarded as” claim.
If Goodpaster is disabled because his multiple sclerosis sometimes impairs his driving, then he cannot show he is qualified to perform the essential functions of his delivery driver position. His position at Schwan’s required him to drive to his customers’ homes. It is undisputed that driving is an essential function of that position. See Knutson v. Schwan’s Home Serv., Inc., 711 F.3d 911, 915 (8th Cir.2013) (“No genuine issue of material fact exists that being DOT qualified to drive a delivery truck is an essential function of Knut-son’s position [with Schwan’s].”). As the district court summarized:
There is no dispute that driving a commercial motor vehicle was one of the essential functions of Goodpaster’s job. Goodpaster’s claimed disability is vision impairment and loss of strength in, and or control of, his limbs.... For obvious reasons, the disability of unpredictable onset of vision impairment and limb control prevents Goodpaster from being qualified to perform one of the essential functions of his job: operating a motor vehicle. Such a condition ... renders him incapable as a matter of law and fact from having “[t]he ability to effectively operate a commercial vehicle,” one of the specific requirements of his position.
“[A]n employer is not required to change the essential nature of the job in order to accommodate an employee.... ” Henkel, 471 N.W.2d at 811. If Goodpaster cannot reliably drive — the basis of his disability claim — then he is not qualified for a customer service manager position at Schwan’s.
Goodpaster’s suggested accommodation — that Schwan’s should have hired another driver to ride along with him in the event he suffered a flare-up of his multiple sclerosis — is unreasonable and would not have enabled him to perform the essential functions of his job. The district court correctly ruled that, as a matter of law, Goodpaster’s requested accommodations would not render him “qualified”:
None of the accommodations he requested would have enabled him to operate a motor vehicle. Rather, the proposed accommodations (sending someone to drive him back to the shop when he had a problem or sending a second driver along with him) would simply have eliminated an essential function of his job.
(Footnote omitted.) Goodpaster was essentially requesting that Schwan’s pay two employees to do the work of one. Such an accommodation is unreasonable as a matter of law. See Knutson, 711 F.3d at 915-16 (affirming summary judgment in favor *23 of Schwan’s, holding Schwan’s was not required to waive DOT license certification in order to accommodate home delivery driver who became vision impaired). Moreover, it would not solve Goodpaster’s problem — he would still be unable to drive his routes to customers’ homes.
Finally, I disagree that a genuine issue of material fact exists as to whether Schwan’s discharged Goodpaster because of his condition. Rather, it is undisputed that Schwan’s never penalized Goodpaster because of his multiple sclerosis. Again, the district court got it right:
[T]he evidence actually shows that Go-odpaster never suffered any adverse job action because of blurred vision or loss of use of his limbs and his concomitant inability to drive. On the first occasion he had the problem, his supervisor told him to “gut it out” which, apparently, he did. On the less than ten other times it happened, he followed his physician’s instructions for dealing with such episodes, recovered and carried on with the work. There is no evidence that Schwan’s ever disciplined him or took any other action against him because he took these “time outs,” so to speak, to recover from episodes of blurred vision or loss of limb function. This means either that the blurred vision and loss of limb function was not a disability or, if it was, that Schwan’s accommodated it.
Schwan’s continued to work with Good-paster for over a year before terminating him, apparently in hopes that his sales abilities would improve. Cf. Howell v. Merritt Co., 585 N.W.2d 278, 281 (Iowa 1998) (noting that close proximity in time between employer’s discovery of employee’s condition and the employee’s discharge presented factual issue precluding summary judgment). No evidence raises an inference of discrimination because of his multiple sclerosis.
Uncontroverted evidence in the record established that Schwan’s terminated Go-odpaster because he did not make his sales quotas. See id. at 280 (noting the ICRA prohibits only “ ‘the discharge of any employee because of the employee’s disability”’ and does not bar employers from discharging employees due to “ ‘the nature of the occupation’” (quoting Henkel, 471 N.W.2d at 809)). Goodpaster’s manager communicated the sales expectations to him; it was no surprise to Goodpaster that he was underperforming. When asked at his deposition if he knew he was not making his sales quota, Goodpaster responded, “yes.” Goodpaster knew he was costing Schwan’s money. He recounted:
[Cjustomers are used to having a driver at a certain time, and because I ha[d] to keep rearranging my [schedule] ... it got to the point where [my manager] was, like, don’t you understand we’re losing money, our customers are used to having you there at a certain time.
He also recognized that his name was at the bottom of the sale rankings “day in and day out.” There is no evidence generating a jury question whether Schwan’s discharged Goodpaster because of his multiple sclerosis. See Beatty v. Hudco Indus. Prods., Inc., 881 F.Supp.2d 1344, 1355 (N.D.Ala.2012) (considering employee’s claim based on multiple sclerosis and commenting “mere knowledge of [a] disability does not equate with discrimination”). Go-odpaster was terminated because of “his inability to perform the necessary tasks of his job,” which were “essential based on the economic realities faced by the employer.” Henkel, 471 N.W.2d at 811. His multiple sclerosis did not give him lifetime tenure or immunity from termination for poor sales.
Iowa’s disability legislation
“assures that truly disabled, but genuinely capable, individuals will not face *24 discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.”
Probasco, 420 N.W.2d at 436 (quoting Forrisi, 794 F.2d at 934). By allowing Good-paster to proceed with his claim, the majority does a disservice to those who truly are substantially limited in their ability to work.
MANSFIELD, J., joins this dissent.

. The Brunker court remanded the case, however, because it concluded a genuine issue existed as to whether Schwan's regarded Brunker as disabled. 583 F.3d at 1009.